# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
March 6, 2012 Session

## CARDIAC ANESTHESIA SERVICES, PLLC v. JON JONES

### Direct Appeal from the Circuit Court for Putnam County
### No. 10J0294     Larry B. Stanley, Jr., Judge

---

### No. M2011-01715-COA-R3-CV - Filed March 30, 2012

---

This case involves the application of the statute of limitations to a legal malpractice action. Appellee attorney drafted a contract for Appellant medical provider; the contract contained a fee-split clause in contravention of Tennessee Code Annotated Section 63-6-225. When the other party to the contract, a hospital, allegedly breached the contract and sued the medical provider, the medical provider counterclaimed for breach of contract. The hospital answered the complaint and filed a motion for summary judgment, asserting that the contract was illegal and unenforceable. The trial court ruled that Tennessee Code Annotated Section 63-6-225 did not apply to the contract at issue. A jury returned a verdict in favor of the medical provider for more than one million dollars. The Court of Appeals reversed, holding that Tennessee Code Annotated Section 63-6-225 invalidated the contract, and remanded the case for dismissal. Within one year of the Court of Appeals opinion, the medical provider filed this legal malpractice case against the drafting attorney. The trial court dismissed the case as beyond the one-year legal malpractice statute of limitations. We affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

C. J. Gideon, Jr., J. Blake Carter, and Brian P. Manookian, Nashville, Tennessee, for the appellant, Cardiac Anesthesia Services.

Daniel H. Rader, III and Daniel H. Rader, IV, Cookeville, Tennessee, for the appellee, Jon Jones.

## OPINION

### I. Background

Plaintiff/Appellant Cardiac Anesthesia Services, P.L.L.C. ("CAS") entered into a contract with Cookeville Regional Medical Center Authority ("Cookeville"); the contract was negotiated and drafted by CAS' attorney Defendant/Appellee Jon Jones. The contract provided a fee-split for services performed by CAS. The fee-split arrangement was suggested by Cookeville and was integrated into the contract by Mr. Jones. However, Tennessee law provides that a physician may not agree to divide any fee received without the knowledge and consent of the individual paying the fee.[1]

After the term of the first contract expired, CAS and Cookeville entered into another contract, which was essentially identical to the previous one. The new contract contained the same fee-splitting agreement, as well as an indemnification clause that was designed to survive the termination of the agreement; the indemnification clause provided that, in the event of litigation, the losing party would pay the other party's legal fees. According to CAS, Cookeville breached the contract, and then filed suit against CAS on February 1, 2006. Cookeville then filed an amended complaint on June 27, 2006, alleging that the contract between CAS and Cookeville was illegal due to the fee-splitting arrangement. On July 31, 2006, CAS filed an answer and counter-complaint against Cookeville, alleging that Cookeville breached the contract and asserting that the contract was enforceable. Shortly thereafter, CAS hired an expert who opined that the fee-splitting arrangement was appropriate. According to later testimony from a CAS representative, CAS expended more than $120,000.00 in legal and expert witness fees in the trial court to defend the contract negotiated by Mr. Jones. However, according to a witness for CAS, the fees expended were

---

[1] Tennessee Code Annotated Section 63-6-225 provides:

> (a) It is an offense for any licensed physician or surgeon to divide or to agree to divide any fee or compensation of any sort received or charged in the practice of medicine or surgery with any person without the knowledge and consent of the person paying the fee or compensation or against whom the fee may be charged.

> (b) The provisions of this section do not prohibit a physician from compensating any independent contractor that provides goods or services to the physician on the basis of a percentage of the physician's fees generated in the practice of medicine. The percentage paid must be reasonably related to the value of the goods or services provided. Payments by physicians in return for referrals are prohibited.

> (c) A violation of this section is a Class B misdemeanor.

paid by unpaid funds owed to Cookeville under the contract, rather than from any funds owned by CAS.

CAS moved for summary judgment on the issue of whether it had breached the contract. By order of October 6, 2006, the trial court granted summary judgment in favor of CAS, ruling that CAS had not breached the contract. Cookeville moved for summary judgment on the fee-splitting issue on November 22, 2006. After a hearing on January 9, 2007, the trial court ruled that the arrangement was not illegal. Cookeville requested permission to file an interlocutory appeal, which was denied by the trial court.

On October 9, 2007, a jury trial was held on the issue of Cookeville's alleged breach of contract. At the close of evidence, the trial court granted a directed verdict in favor of CAS. The jury then awarded CAS $1,396,730.00 in damages. Cookeville appealed, arguing that the underlying contract was unenforceable due to the fee-splitting arrangement. This Court agreed in *Cookeville Regional Medical Center Authority v. Cardiac Anesthesia Services, P.L.L.C.*, No. M2007-02561-COA-R3-CV, 2009 WL 4113586 (Tenn. Ct. App. Nov. 24, 2009). Therein, we held that the fee-splitting arrangement was illegal and remanded the case for dismissal. *Id*. CAS' application for permission to appeal to the Tennessee Supreme Court was denied on May 20, 2010.

On October 27, 2010, CAS filed a separate complaint against Mr. Jones for his alleged legal malpractice arising from the negotiation and drafting of the illegal contract. CAS propounded written discovery against Mr. Jones, to which he never responded. Instead, on January 4, 2011, Mr. Jones filed a "Rule 12 Motion to Dismiss/Rule 56 Motion for Summary Judgment." In his motion, he argued that the statute of limitations on the legal malpractice claim had expired and that the suit should be dismissed. Attached to the motion, Mr. Jones filed a Statement of Undisputed Facts, stating:

1.      [CAS] was on notice that Cookeville [] claimed its contract was unenforceable when it received the amended answer of Cookeville [] on June 27, 2006, asserting the contract's unenforceability in that response, and then [CAS] incurred legal fees and expenses in preparing to answer the amended complaint claiming unenforceability of the contract. . . .

2.      [CAS] was put on notice that Cookeville [] claimed the unenforceability of the contract based on the motion for summary judgment filed by Cookeville [] on November 22, 2006. . . .

-3-

3.      [CAS] incurred legal fees and expenses in defending the motion for summary judgment filed by Cookeville [] asserting the unenforceability of the contract in 2006 and 2007.

*  *  *

6.      [CAS'] owner/representative, Robert Cerza, testified that as of October 1, 2007, he had incurred $122,000.00 in legal fees and expenses in defending the enforceability of the contract and asserting its breach. . . .

7.      Gideon & Wiseman, PLC and Attorney C.J. Gideon, Jr. charged and received legal fees from [CAS] in 2006, 2007, and 2008 for defending the enforceability of the contract. . . .

8.      [CAS] retained Nancy Jones as an expert to give a formal opinion with respect to the enforceability of the contract in November 2006 incurring legal fees and expenses with respect to defending the enforceability of the contract . . . .

9.      Gideon & Wiseman, PLC and Attorney C.J. Gideon charged and received legal fees from [CAS] in 2006, 2007, and 2008 defending [CAS] from the legal position asserted by Cookeville [], to wit, that the contract was unenforceable pursuant to Tennessee Code Annotated §63-6-225(a).

CAS did not file a response to Mr. Jones' statement of undisputed facts. Mr. Jones also filed a motion to stay discovery and for a protective order excusing him from responding to CAS' discovery requests. CAS subsequently filed a motion to compel Mr. Jones' discovery responses.

On July 1, 2011, the court heard the motion for summary judgment, the motion to stay discovery and for a protective order and the motion to compel. The attorney for Mr. Jones requested that the motion for summary judgment be heard first, noting that, if the motion was granted, the court would not be required to consider any discovery issues. The trial court

asked the attorney for CAS if that would be acceptable, and he agreed, though he emphasized that Mr. Jones had failed to respond to any discovery requests. Mr. Jones responded that, because the summary judgment motion was based entirely on the record of what occurred in *Cookeville*, discovery was not necessary to defend the motion. The trial court then asked the attorney for CAS, "Do you feel that there are other issues that need to be discovered before you can defend that motion [for summary judgment based on the statute of limitations]?" The attorney for CAS responded:

> No, I can argue this morning based on what they've relied upon, but what I disagree with is [Mr. Jones' attorney's] suggestion that because defense counsel has decided that the only thing that is important is the technical record that precludes [CAS] from conducting any discovery at all. I don't agree with that and I don't think that's consistent with the law.

The trial court ruled that the statute of limitations began running on either June 27, 2006, when the amended complaint was filed asserting the unenforceability of the contract, or on January 9, 2007, when the motion for summary judgment on the issue of enforceability was argued. Accordingly, the trial court found that the case was time-barred. By order of July 11, 2011, the trial court granted summary judgment in favor of Mr. Jones and dismissed the case, holding that the expiration of the statute of limitations barred the claim. Because of the dismissal, the court did not consider CAS' motion to compel discovery. CAS timely appealed.

## II. Issues Presented

CAS raises the following issues, which are taken from its brief:

> 1. Was the trial court's grant of summary judgment in error in the absence of adequate time for discovery, particularly when [Mr. Jones] refused to respond to the initial discovery request?
> 2. Whether the trial court's determination that the statute of limitations for [the] legal malpractice action was triggered prior to the Court of Appeals' decision invalidating the underlying contract was improper under Tennessee Rule of Civil Procedure 56?[2]

---

[2]As a point of practice, we note that Tennessee Rule of Appellate Procedure 24(a) provides, in
(continued...)

## III. Standard of Review

Because this case was adjudicated by summary judgment, we first note that a trial court's decision on a motion for summary judgment presents a question of law. Our review is, therefore, *de novo* with no presumption of correctness afforded to the trial court's determination. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997). "This Court must make a fresh determination that the requirements of Tennessee Rule of Civil Procedure 56 have been satisfied." ***Mathews Partners, L.L.C. v. Lemme***, No. M2008-01036-COA-R3-CV, 2009 WL 3172134, at *3 (Tenn. Ct. App. Oct. 2, 2009) (citing ***Hunter v. Brown***, 955 S.W.2d 49, 50–51 (Tenn. 1977)).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving

---

[2](...continued)
relevant part, that:

> The following papers filed in the trial court are excluded from the record: (1) subpoenas or summonses for any witness or for any defendant when there is an appearance for such defendant; (2) all papers relating to discovery, including depositions, interrogatories and answers thereto, reports of physical or mental examinations, requests to admit, and all notices, motions or orders relating thereto; (3) any list from which jurors are selected; and (4) trial briefs; and (5) minutes of opening and closing of court. Any paper relating to discovery and offered in evidence for any purpose shall be clearly identified and treated as an exhibit. **No paper need be included in the record more than once.**

*Id*. (emphasis added).

This record contains several volumes, in large part due to the same papers being filed numerous times. In fact, the underlying contract between CAS and Cookeville is provided no less than four times in the record. It is too often the case that an Appellant includes all filings made in the trial court and every portion of the transcript of the hearing (including arguments of counsel) in contravention of the foregoing Rule of Appellate Procedure. The problem with inclusion of extraneous filings that are clearly excluded from the appellate record is that it places upon this Court a duty that falls to the Appellant—to prepare a correct and complete record on appeal. Tenn. R. App. P. 24(b). In making that record, the Appellant should adhere to the mandates contained in Tennessee Rule of Appellant Procedure 24(a). This Court endeavors to file its opinions in a timely manner; however, when placed in the position of having to review volumes of extraneous, unnecessary, and irrelevant filings, our goal is hindered and the interests of judicial economy are stymied.

party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. ***Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1, 8–9 (Tenn. 2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shutup' or even to cast doubt on a party's ability to prove an element at trial." ***Id***. at 8. If the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." ***Id***. at 5 (citing ***Byrd v. Hall***, 847 S.W.2d 208, 215 (Tenn. 1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. 56.06." ***Martin v. Norfolk S. Ry. Co.***, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted).

When reviewing the evidence, we must determine whether factual disputes exist. In evaluating the trial court's decision, we review the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. ***Stovall v. Clarke***, 113 S.W.3d 715, 721 (Tenn. 2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." ***Mathews Partners***, 2009 WL 3172134, at *3 (citing ***Byrd***, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." ***Byrd***, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." ***Id***. "Summary [j]udgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." ***Landry v. South Cumberland Amoco, et al.***, No. E2009-01354-COA-R3-CV, 2010 WL 845390, at *3 (Tenn. Ct. App. March 10, 2010) (citing ***Carvell v. Bottoms***, 900 S.W.2d 23 (Tenn. 1995)). However, if there is any uncertainty concerning a material fact, then summary judgment is not the appropriate disposition. As stated by our Supreme Court in ***Evco Corp. v. Ross***, 528 S.W.2d 20 (Tenn. 1975):

> The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding the material facts. Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He [or she] is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a

substitute for a trial of disputed factual issues.

*Id*. at 24–25.

## IV. Analysis

### A. Adequate Time for Discovery

CAS first argues that summary judgment was improper because adequate time for discovery was not provided. Indeed, our Supreme Court has stated:

> Where there is [the] slightest possibility that [the] party opposing [a] motion for summary judgment has been denied [an] opportunity to file affidavits, take discovery depositions or amend, by disposition of motion for summary judgment without 30 day interval following filing of motion, it will be necessary to remand case to cure such error.

*Craven v. Lawson*, 534 S.W.2d 653 (Tenn. 1976). Further, this Court has stated that one method of defeating a properly supported motion for summary judgment is through a request for more discovery:

> [Nonmoving] parties may deflect a summary judgment motion challenging their ability to prove an essential element of their case by (1) pointing to evidence either overlooked or ignored by the moving party that creates a factual dispute, (2) rehabilitating evidence challenged by the moving party, (3) producing additional evidence that creates a material factual dispute, or (4) *submitting an affidavit in accordance with Tenn. R. Civ. P. 56.07 requesting additional time for discovery. **Rains v. Bend of the River***, 124 S.W.3d 580, 587–88 (Tenn. Ct. App. 2003) (citing ***Staples v. CBL & Assoc., Inc.***, 15 S.W.3d 83, 88–89 (Tenn. 2000); ***McCarley v. West Quality Food Serv.***, 960 S.W.2d 585, 588 (Tenn. 1998)).

*Regions Financial Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 401 (Tenn. Ct. App. 2009) (emphasis added). The interest in full discovery, however, must be balanced against the purpose of summary judgment: "[to] provide[] a quick, inexpensive way to conclude cases when there exists no dispute regarding the material facts." *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1, 13 (Tenn. 2008). Indeed, "[t]he philosophy of summary judgment is to avoid

a needless trial in a case where, although the pleadings may indicate disputes over factual issues, facts outside the pleadings if known would clearly show that there is "no genuine issue as to any material fact." *Id.* at 12 (quoting Donald F. Paine, *Recent Developments in Tennessee Procedure: The New Tennessee Rules of Civil Procedure*, 37 Tenn. L. Rev. 501, 516 (1970)).

Mr. Jones argues that CAS neither filed an affidavit requesting additional discovery in response to Mr. Jones' motion for summary judgment, nor objected to arguing the summary judgment motion on July 1, 2011; consequently, Mr. Jones contends that CAS has waived any argument that the trial court failed to allow adequate time for discovery in this Court. It is well-settled that the failure to object during trial constitutes a waiver of the issue on appeal. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). The transcript of the hearing on the motion for summary judgment supports Mr. Jones' argument that the issue was waived. When asked if he could proceed to argue the motion for summary judgment, without having received any discovery responses, CAS' attorney stated, "No, I can argue this morning based on what they've relied upon . . . ."

Even assuming that CAS did not waive this issue in the trial court, its argument in favor of additional time for discovery fails. Although CAS' attorney stated that he believed summary judgment was inappropriate without the benefit of discovery, CAS did not put forth any argument that the discovery responses would assist CAS in arguing the summary judgment motion. However, this Court has previously held that a trial court's decision to deny additional time for discovery, in order for the non-moving party to meet summary judgment, "must be viewed in the context of the issues being tried and the posture of the case at the time the request for discovery is made." ***Regions,*** 310 S.W.3d at 401 (citing ***Price v. Mercury Supply Co.***, 682 S.W.2d 924, 935 (Tenn. Ct. App. 1984)). Accordingly, a trial court only errs in refusing to grant additional time for discovery prior to the hearing on a motion for summary judgment when the non-moving party can show that "the requested discovery would have assisted [the non-moving party] in responding to [the moving party's] motion for summary judgment." ***Regions,*** 310 S.W.3d at 401 (citing ***Simmons v. State Farm Gen. Ins. Co.***, No. W2003-02643-COA-R3-CV, 2004 WL 2715341, at *5 (Tenn. Ct. App. Nov. 24, 2004)).

In CAS' brief, it asserts that discovery would have "identif[ied] the date upon which Mr. Jones first became aware of Tenn. Code Ann. §63-6-225 and whether Mr. Jones made any representations to CAS regarding the legality of the contract." Specifically, CAS states that "if [Mr. Jones] first became aware of Tenn. Code Ann. §63-6-225 at the time of the Court of Appeals' opinion, this information would suggest that it was plausible that [CAS]

also did not have knowledge of the statute's existence." This argument is without merit. The record clearly shows that Cookeville filed a motion for summary judgment on November 22, 2006, specifically citing Tennessee Code Annotated Section 63-6-225; the motion was served on CAS' attorneys.[3] "It is well settled that "[k]nowledge of facts learned by an attorney in the course of his [or her] employment will be imputed to his client." *Boote v. Shivers*, 198 S.W.3d 732, 742 (Tenn. Ct. App. 2005) (quoting *Bellar v. Baptist Hosp., Inc.*, 559 S .W.2d 788, 789 (Tenn. 1978)). "Once it has been established that the attorney obtained the relevant knowledge during the course of representing the client, 'the constructive notice thereof to the client is conclusive, and cannot be rebutted by showing that the attorney did not in fact impart the information so acquired.'" *Boote*, 198 S.W.3d at 742 (quoting *Smith v. Petkoff*, 919 S.W.2d 595, 597–98 (Tenn. Ct. App. 1995)). Accordingly, CAS can be held to have knowledge of Tennessee Code Annotated Section 63-6-225 nearly four years prior to the commencement of this action, regardless of Mr. Jones' knowledge of the prevailing law.

CAS also argues that "whether Mr. Jones made any representations to CAS regarding the legality of the contract [] goes directly to [CAS'] knowledge of the injury, and potential claim for concealment." It is well-settled that "an attorney's purposeful concealment from a client of facts that prevents the client from learning of an injury can toll the statute of limitations on legal malpractice." *Cherry v. Williams*, 36 S.W.3d 78, 85 (Tenn. Ct. App. 2000) (citing *Nobes v. Earhart*, 769 S.W.2d 868, 872–73 (Tenn. Ct. App. 1988)). However, "[a] lawyer's rosy characterization of an order adverse to the client does not amount to fraudulent concealment of malpractice." *Cherry*, 36 S.W.3d at 86 (citing *Riddle v. Driebe*, 153 Ga.App. 276, 265 S.E.2d 92, 95 (1980)). Further, this Court has previously stated, "[W]e do not believe that reliance upon erroneous legal advice can operate to toll the statute of limitations." *Spar Gas, Inc. v. McCune*, 908 S.W.2d 400, 404 (Tenn. Ct. App. 1995). We must point out, however, from our review of the record in this case, CAS was not represented by Mr. Jones in the prior proceeding; instead, CAS had already retained new representation at the time Cookeville filed its motion for summary judgment and throughout the *Cookeville* case. Accordingly, CAS had independent legal counsel throughout the proceedings and was not forced to rely on any assurances as to the enforceability of the contract that may have been offered by Mr. Jones. Further, there is no evidence in the record stating that Mr. Jones gave CAS assurances as to the enforceability of the contract, nor are there any affidavits supporting that argument on behalf of CAS. Although CAS argues that the lack of this evidence supports the argument in favor of additional discovery, it is clear that information regarding any assurances made to CAS would have been in the custody and control of CAS and, as such, CAS would not have been prevented from uncovering that information by Mr. Jones' failure to respond to written interrogatories. Accordingly, CAS' failure to put forth any affidavits or evidence to support this assertion is wholly attributable to CAS, rather than

---

[3] Mr. Jones did not represent CAS in the prior proceeding.

-10-

to the lack of formal discovery in this case.

CAS goes on to state that the above "examples barely scratch the surface of the evidence that might have been developed had the trial court allowed adequate time for discovery to occur." However, this Court has previously held that "bare allegations" are insufficient to defeat a properly supported motion for summary judgment. *See Daugherty v. Sony Electronics*, Inc., No. E2004-02627-COA-R3-CV, 2006 WL 197090, at \*4 (Tenn. Ct. App. Jan. 26, 2006). Federal courts, applying a substantially similar summary judgment rule, have held that "conclusory allegations, improbable inferences, and unsupported speculation are insufficient to defeat summary judgment."[4] *Poulis-Minott v. Smith*, 388 F.3d 354, 366–67 (1st Cir. 2004) (quoting *Leblanc v. Great American Ins. Co.*, 6 F.3d 836, 842 (1st Cir.1993)); *see also* Tracy Bateman Farrell *et al.*, *Federal Procedure*, 27A Fed. Proc., L. Ed. § 62:611 ("[A] bare assertion that evidence to support a fanciful allegation lies within the exclusive control of the defendants, and can be obtained only through discovery, is not sufficient to defeat a motion for summary judgment.").

Further, this Court has previously held that:

> Defenses based on a statute of limitations are particularly amenable to summary judgment motions. *See Creed v. Valentine*, 967 S.W.2d 325, 327 (Tenn. Ct. App. 1997); *Allied Sound, Inc. v. Neely*, 909 S.W.2d 815, 820 (Tenn. Ct. App. 1995). Most often the facts material to a statute of limitations defense are not in dispute. When the facts and the inferences reasonably drawn from the facts are not disputed, the courts themselves can bring to bear the applicable legal principles to determine whether the moving party is entitled to a judgment as a matter of law.

*Cherry*, 36 S.W.3d at 83. In this case, there are no disputed facts because CAS did not object to Mr. Jones' statement of undisputed facts. It is well-settled that, when a non-moving party fails to respond to the moving party's statement of undisputed facts, the court may consider the facts admitted. *Holland v. City of Memphis*, 125 S.W.3d 425, 428–29 (Tenn. Ct. App. 2003) ("Thus the material facts set forth in the statement of the moving party may be deemed

---

[4] The Tennessee Supreme Court has previously held that while this Court is not bound by the interpretations federal courts give to their rules of procedure, those interpretations are persuasive authority for purposes of construing a similar Tennessee rule. *See Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 430 (Tenn. 2011) (citing *Harris v. Chern*, 33 S.W.3d 741, 745 n.2 (Tenn. 2000)).

admitted in the absence of a statement controverting them by the opposing party."); *see also Waters v. Tenn. Dep't of Corr.*, No. M2002–00917–COA–R3–CV, 2003 WL 21713421, at *4 (Tenn. Ct. App. July 24, 2003) (holding that the complete failure to respond to motion for summary judgment and statement of undisputed facts can amount to a conclusive admission that the facts contained in the statement are undisputed); *Simmons v. Harris*, No. M2000–00227–COA–R3–CV, 2000 WL 1586451, at *3 (Tenn. Ct. App. Oct. 25, 2000) (holding that as consequence of non-moving party's failure to comply with Rule 56.03, the moving party's alleged facts were deemed admitted). Accordingly, the bare assertions contained in CAS' brief, coupled with CAS' failure to file any affidavits in the trial court or to object to Mr. Jones statement of undisputed facts, are insufficient to delay the motion for summary judgment in order to allow additional time for discovery.

## B. Statute of Limitations

CAS next argues that the trial court erred in finding that CAS' complaint was filed beyond the one-year statute of limitations for legal malpractice actions. Our Supreme Court has previously explained the statute of limitations in malpractice actions:

> The statute of limitations for legal malpractice is one year from the time the cause of action accrues. Tenn. Code Ann. §28-3-104(a)(2). When the cause of action accrues is determined by applying the discovery rule. Under this rule, a cause of action accrues when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant. *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998); *Stanbury v. Bacardi*, 953 S.W.2d 671, 677 (Tenn. 1997).

*John Kohl & Co., P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998).

CAS argues that, under the discovery rule, it did not "know[] or in the exercise of reasonable care and diligence should [have] know[n] that an injury ha[d] been sustained as a result of wrongful or tortious conduct by the defendant" prior to the Court of Appeals decision filed on November 24, 2009. *Kohl*, 977 S.W.2d at 532. According to this argument, CAS asserts that its legal malpractice action was timely filed. Mr. Jones argues, however, that the malpractice action was not timely filed because CAS was on notice of the injury prior to the Court of Appeals decision. Our Supreme Court has explained the discovery rule in malpractice actions:

> In legal malpractice cases, the discovery rule is composed

of two distinct elements: (1) the plaintiff must suffer legally cognizable damage—an actual injury—as a result of the defendant's wrongful or negligent conduct, and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by the defendant's wrongful or negligent conduct.

*Kohl*, 977 S.W.2d at 532 (citing *Carvell v. Bottoms*, 900 S.W.2d 23, 28–30 (Tenn. 1995)).

Accordingly, to prevail on its motion for summary judgment, considering the facts in the light most favorable to CAS, *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003), Mr. Jones must show that CAS was injured and either knew or should have known that the injury was caused by Mr. Jones' conduct more than one year prior to the filing of this malpractice action.

### 1. Injury

First, we consider whether CAS "suffer[ed] legally cognizable damage" more than one year prior to the filing of this malpractice action. Regarding the injury prong of the discovery rule, our Supreme Court has explained:

An actual injury occurs when there is the loss of a legal right, remedy or interest, or the imposition of a liability. *See LaMure v. Peters*, 122 N.M. 367, 924 P.2d 1379, 1382 (1996). An actual injury may also take the form of the plaintiff being forced to take some action or otherwise suffer "some actual inconvenience," such as incurring an expense, as a result of the defendant's negligent or wrongful act. *See State v. McClellan*, 113 Tenn. 616, 85 S.W. 267, 270 (1905) ("[A negligent act] may not inflict any immediate wrong on an individual, but . . . his right to a remedy . . . will [not] commence until he has suffered some actual inconvenience . . . . It may be stated as an invariable rule that when the injury, however slight, is complete at the time of the act, the statutory period then commences, but, when the act is not legally injurious until certain consequences occur, the time commences to run from the consequential damage . . . ."). However, the injury element is not met if it is contingent upon a third party's actions or amounts to a mere possibility. *See Caledonia Leasing v. Armstrong, Allen*, 865 S.W.2d 10, 17 (Tenn. Ct. App. 1992).

-13-

***Kohl***, 977 S.W.2d at 532.

In ***John Kohl & Co., P.C. v. Dearborn & Ewing***, the Tennessee Supreme Court applied the above rule to determine that the legal malpractice complaint in that case was barred by the statute of limitations. In ***Kohl***, the plaintiffs sued the defendant law firm for malpractice based on allegedly negligent tax advice regarding the plaintiff's business. ***Id.*** at 531–32. In 1984, the plaintiffs sought the legal advice of the Dearborn & Ewing law firm regarding their business. ***Id.*** An associate for the firm recommended a profit-sharing plan for the benefit of the plaintiffs, which the attorney assisted the plaintiffs in implementing. ***Id.*** However, in September of 1988 the Internal Revenue Service ("IRS") sent a letter to the plaintiffs questioning their income reporting. ***Id.*** at 531. The plaintiff's accountant responded to the IRS' requests in October 1988. ***Id.*** Shortly thereafter, the plaintiffs terminated the defendant law firm and retained new counsel. ***Id.***

In May of 1990, the plaintiffs filed a legal malpractice action against the Dearborn & Ewing law firm, alleging, *inter alia*, that the law firm negligently recommended and drafted the profit-sharing plan. ***Id.*** The law firm argued that the action was barred by the statute of limitations. The trial court disagreed, awarding damages to the plaintiffs. ***Id.*** at 531–32. The Court of Appeals subsequently affirmed. ***Id.*** at 532. In a unanimous decision, the Tennessee Supreme Court reversed, holding that the statute of limitations barred the claim. ***Id.*** at 533. According to the Supreme Court, the plaintiffs had suffered "an actual injury" when they terminated the attorney-client relationship with the law firm and retained new counsel to represent them with regard to the IRS. ***Id.*** The Supreme Court stated: "The plaintiffs suffered an actual injury for purposes of the discovery rule when they began to incur expenses, or at least had to take some action, as a result of the defendants' negligent advice," despite the fact that the IRS had not taken formal action against the plaintiffs. ***Id.*** In addition, the Supreme Court held that the plaintiffs were aware of a "potential problem" with the law firm's representation when the plaintiffs retained new counsel to represent them. ***Id.*** Accordingly, the Supreme Court reversed the trial court and the Court of Appeals and dismissed the case. ***Id.*** at 533–34.

CAS argues that prior to the Court of Appeals decision becoming final, CAS suffered no injury, which is required to trigger the running of the statute of limitations. Both CAS and Mr. Jones cite unreported cases from this Court applying the foregoing law in ***Kohl*** to support their arguments. CAS cites ***Davidson v. Baydoun***, No. M2008-02746-COA-R3-CV, 2009 WL 2365563 (Tenn. Ct. App. July 31, 2009), which involved an attorney's alleged negligence during trial. In ***Davidson***, the plaintiff's attorney was allegedly inebriated during the trial and failed to argue the full amount of damages sought by his client. ***Id.*** at *1. The trial court orally awarded damages to the plaintiff, but significantly less than anticipated due to the attorney's failure to present evidence on additional damages. ***Id.*** at *2. For

-14-

unexplained reasons, the order reflecting the oral ruling was entered nearly a year later. *Id.* The plaintiff filed a legal malpractice claim against the attorney within one year of the filing of the order, but beyond one year from the oral ruling. *Id.* The trial court dismissed the action as barred by the statute of limitations. *Id.* The Court of Appeals reversed, holding that the plaintiff was not injured by the attorney's alleged negligence until the entry of the final order in the case. *Id.* at *6. This Court reasoned that "because a legally cognizable injury occurs when a party loses a right or remedy, and it is a court's 'judgment that decrees the loss of a right or remedy,'" then the injury could not occur until entry of the final judgment. *Id.* at *6 (quoting *Cherry v. Williams*, 36 S.W.3d 78, 84–85 (Tenn. Ct. App. 2000)).

In contrast, Mr. Jones cites *Honeycutt v. Wilkes*, W2007-00185-COA-R3-CV, 2007 WL 2200285 (Tenn. Ct. App. Aug. 2, 2007), which involved an attorney's alleged negligent advice regarding the application of a marital dissolution agreement. In *Honeycutt*, the marital dissolution agreement contained a clause terminating Wife's alimony if she remarried or cohabited. *Id.* at *1. Wife maintained her home in Tennessee, but due to her job in Florida, also lived two-thirds of the year in Florida, where she resided with a man. *Id.* at *1. When Husband sought to terminate his alimony payments due to the cohabitation, Wife faxed a request to the attorney who represented her in the divorce that the attorney handle the matter. However, the attorney never responded and took no action on the case. *Id.* at *1. Wife retained new counsel to defend the action to terminate her alimony payments, noting in the letter terminating the prior attorney that, "You advised me it was permissible to have [sic] relationship with a male and stay at his house, as long as I had a Tennessee residence and driver's license." *Id.* at *2. The trial court found that Wife was not cohabiting with the man in Florida because Wife was financially independent. *Id.* The Court of Appeals reversed, holding that the marital dissolution agreement required only proof of cohabitation, not financial support, to terminate alimony payments. *Id.*

Within one year of the Court of Appeals decision, Wife filed a legal malpractice action against her first attorney. *Id.* The attorney moved for summary judgment, arguing that the claim was barred by the statute of limitations. *Id.* at *3. The trial court held that the claim was barred because the statute began to run when Wife was forced to defend Husband's petition to terminate her alimony, nearly three years prior to the filing of the legal malpractice claim. *Id.* This Court agreed, explaining:

> In this case, [Wife] began to incur additional attorney's fees when [Husband] filed the petition to terminate alimony, and those fees eventually exceeded $56,000 over the course of the proceedings. This constituted an actual injury that triggered the accrual of her legal malpractice action. When we reversed the trial court, her loss of alimony payments was additional damage,

but it was not necessary for [Wife] to have suffered all the injurious effects or consequences of the alleged negligence in order for the statute to begin running. *See Kohl,* 977 S.W.2d at 533. When [Wife] suffered an actual injury, she could not delay filing her malpractice action until an adverse judgment was entered against her.

*Id.* at *7.

Based on the foregoing, we conclude that the time and expense of defending Cookeville's motion for summary judgment, argued on January 9, 2007, constituted an actual injury for purposes of the discovery rule. As discussed above, the Tennessee Supreme Court has held that damage need not be the entry of an order adverse to the client, but may consist of the "plaintiff being forced to take some action or otherwise suffer 'some actual inconvenience,' such as incurring an expense, as a result of the defendant's negligent or wrongful act." *Kohl*, 977 S.W.2d at 532–33. Unlike in *Davidson*, CAS suffered damage, in the form of expense and inconvenience, prior to the entry of the final adverse order in this case. The client in *Davidson* had not expended any time or money directly as a result of his attorney's negligence during the trial or at the time of the oral ruling; instead his time and effort were spent solely prosecuting his claim for damages. In *Honeycutt*, however, the time and expense of the litigation were a direct result of the attorney's alleged negligent advice. *Honeycutt*, 2007 WL 2200285, at *6. Accordingly, this Court, in *Honeycutt*, held that Wife was injured when she was "forced to defend against [Husband's] petition." *Honeycutt*, 2007 WL 2200285, at *6. Similarly to Wife in *Honeycutt*, CAS incurred expenses and inconvenience when it was forced to defend against Cookeville's motion for summary judgment on January 9, 2007. The decision of the Court of Appeals ultimately invalidating the contract was "additional damage, but it was not necessary for [CAS] to have suffered all the injurious effects or consequences of the alleged negligence in order for the statute to begin running. *Id.* at *7 (citing *Kohl,* 977 S.W.2d at 533).

CAS argues, however, that unlike *Honeycutt*, where the only issue involved Wife's cohabitation, the expense of the litigation in *Cookeville* was primarily to prosecute CAS' breach of contract claim, rather than to defend against Cookeville's illegality argument and that the expenses cannot be separated. To support this argument, CAS relies on *Caledonia Leasing and Equipment Co., Inc. v. Armstrong, Allen*, 865 S.W.2d 10 (Tenn. Ct. App. 1992), which reversed the trial court's determination that the case was barred by the statute of limitations, in part because the attorney fees incurred by the plaintiff in the case were too "uncertain" and "speculative" to trigger the statute of limitations because the fees were "related to bankruptcy matters other than or in addition to" the injury caused by the attorney. *Id.* at 17–18. However, the record, as well as the statement of undisputed facts, shows that

CAS hired an expert witness for the sole purpose of defending the legality of the contract at the summary judgment hearing. The purpose behind this expense is not uncertain or speculative; it is wholly attributable to a determination of the legality of the fee-splitting arrangement contained in the underlying contract. In addition, the Court of Appeals, in *Caledonia,* ultimately held that the plaintiff in the case was injured by the attorney's conduct "when it was forced to defend the validity of the deeds against the Trustee's attack." *Id.* at 17. Accordingly, the holding in *Caledonia* supports our conclusion that CAS was likewise injured when it was forced to defend the validity of the contract at the hearing on Cookeville's motion for summary judgment on January 9, 2007.

CAS also argues that all legal expenses at trial were paid from funds owed to Cookeville under the contract, or in the alternative, that the expenses were recoverable from Cookeville under the indemnity clause contained in the contract until the Court of Appeals invalidated the contract. Accordingly, CAS argues that summary judgment was improper without a trial on these issues. These arguments are without merit. First, as discussed above, because of CAS' failure to respond to Mr. Jones' statement of undisputed fact, we deemed those facts admitted. In those facts, CAS admits to having incurred legal fees in order to defend the motion for summary judgment. Second, because the contract as a whole was invalidated, no money was owed under the contract to Cookeville; accordingly, the money expended was owned by CAS. Finally, the Supreme Court in *Kohl* required only an "actual inconvenience" and mentioned incurring an expense as merely an example. *Kohl*, 977 S.W.2d at 532–33; *see also Burns v. U.S.*, 274 U.S. 328, 47 S.Ct. 650, 71 L.Ed. 1077 (1927) ("As the use of the term "such as" confirms, the list is illustrative, not exhaustive."). CAS was injured when they were hailed into court to defend the enforceability of the contract on January 9, 2007. *See Caledonia*, 865 S.W.2d at 17 (holding that the plaintiff was injured when it was forced to defend the validity of the documents at issue). Accordingly, CAS suffered some "actual inconvenience" in having to defend the contract in court, regardless of whether CAS incurred an actual expense in doing so.

### 2. Knowledge

Having determined that the injury prong of the discovery rule has been satisfied, CAS must also have had knowledge of its injury more than one year prior to the filing of this malpractice action. The Tennessee Supreme Court has explained the knowledge prong of the discovery rule:

> The knowledge component of the discovery rule may be established by evidence of actual or constructive knowledge of the injury. *Carvell*, 900 S.W.2d at 29. Accordingly, the statute of limitations begins to run when the plaintiff has actual

knowledge of the injury as where, for example, the defendant admits to having committed malpractice or the plaintiff is informed by another attorney of the malpractice. Under the theory of constructive knowledge, however, the statute may begin to run at an earlier date—whenever the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct. Id. We have stressed, however, that there is no requirement that the plaintiff actually know the specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard. *Shadrick*, 963 S.W.2d at 733. Rather, "the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." *Carvell*, 900 S.W.2d at 29 (quoting *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994)). "It is knowledge of facts sufficient to put a plaintiff on notice that an injury has been sustained which is crucial." *Stanbury*, 953 S.W.2d at 678. A plaintiff may not, of course, delay filing suit until all the injurious effects or consequences of the alleged wrong are actually known to the plaintiff. *Shadrick*, 963 S.W.2d at 733; *Wyatt v. A-Best Company*, 910 S.W.2d 851, 855 (Tenn. 1995). Allowing suit to be filed once all the injurious effects and consequences are known would defeat the rationale for the existence of statutes of limitations, which is to avoid the uncertainties and burdens inherent in pursuing and defending stale claims. *Wyatt*, 910 S.W.2d at 855.

*Kohl*, 977 S.W.2d at 532–33.

CAS argues that this case does not involve an action on the part of CAS that evidences their knowledge of a legal claim against Mr. Jones. To support this argument, CAS distinguishes its case from *Honeycutt*, wherein this Court held that Wife became aware of her injury when she expressed distrust in her attorney's representation and terminated her employment. *Honeycutt*, 2007 WL 2200285, at *10. Because Mr. Jones did not represent CAS at trial and, therefore, was not terminated once the alleged unenforceability of the contract came to light, CAS argues that there is no evidence that it knew that Mr. Jones had negligently drafted the contract. The Supreme Court has "stressed, however, that there is no requirement that the plaintiff actually know the specific type of legal claim he or she has, or

that the injury constituted a breach of the appropriate legal standard." ***Kohl***, 977 S.W.2d at 533. In addition, actual knowledge is not required in order for the statute of limitations to begin to run. As discussed above, the statute will begin to run when the plaintiff has constructive knowledge of the malpractice—"whenever the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct." ***Id.*** Accordingly, CAS may be found to have knowledge of the injury when facts were discovered or brought to its attention that would put a reasonable person on notice of Mr. Jones' wrongful conduct, regardless of whether CAS had actual knowledge that Mr. Jones' conduct was a breach of his duty as an attorney.

In this case, Cookeville's motion for summary judgment, filed on November 22, 2006, specifically alleges that the fee-splitting provision of the contract was illegal; this allegation would have put a reasonable person on notice that they had sustained an injury as a result of Mr. Jones' alleged negligence.  In a similar case, ***Lufkin v. Conner***, 338 S.W.3d 499 (Tenn. Ct. App. 2010), this Court held that the filing of a motion to suppress was sufficient to put the plaintiff on notice that his former attorney committed malpractice. In ***Lufkin***, David A. Lufkin, an attorney, was sued by a former client for legal malpractice. An attorney from Mr. Lufkin's firm represented him at trial, where it came to light that Mr. Lufkin had engaged in certain inappropriate behavior. Accordingly, Mr. Lufkin settled the case and hired a separate criminal defense attorney. A Presentment was subsequently returned against Mr. Lufkin. After learning that Mr. Lufkin's prior attorney, who had never withdrawn as his counsel, had "provided substantial information against his very own client," to prosecutors, Mr. Lufkin's criminal defense attorney filed a Motion to Dismiss and/or Motion to Suppress any and all Evidence obtained through Mr. Lufkin's civil defense attorney. Mr. Lufkin never read the motion to suppress. When Mr. Lufkin filed a legal malpractice claim against his first attorney more than a year after the filing of the motion to suppress, the trial court dismissed the claim as being beyond the one-year statute of limitations. This Court affirmed, holding that the motion to suppress was sufficient to put Mr. Lufkin on notice that he had suffered an injury as a result of his former attorney's conduct, even though Mr. Lufkin had no actual knowledge of the motion to suppress. ***Id.*** at 504–05.

Similarly, the motion for summary judgment in this case was sufficient to put CAS "on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct." ***Kohl***, 977 S.W.2d at 532–33. At the time of the summary judgment motion, CAS was put on notice of Tennessee law, which could invalidate the contract drafted by Mr. Jones. Unlike in ***Wilson v. Meares***, 15 S.W.3d 865 (Tenn. Ct. App. 1999), at the time of the first litigation, CAS was represented by independent counsel, rather than Mr. Jones. In ***Wilson***, this Court held that genuine issues of material fact existed as to whether the plaintiff knew that his injury was caused by his attorney's wrongful conduct because the

-19-

attorney continued to represent the plaintiff, did not advise the plaintiff to seek independent counsel and continuously assured the plaintiff that the attorney's actions were "carefully researched" and proper. *Id.* at 872. In contrast, the record in this case shows that CAS was represented by a different attorney throughout the litigation in *Cookeville*. In addition, due to the serious allegation that the contract was unenforceable, CAS, through its attorney, took affirmative action in retaining an expert in November of 2006, whose sole purpose was to defend the contract. This action shows that CAS was reasonably put on notice of a "potential problem" with their contract, which was undisputedly drafted by Mr. Jones. Despite CAS' argument that they were only aware of potential wrongful conduct on the part of Mr. Jones at the time of the Court of Appeals decision, the knowledge prong does not require an adverse court order, but merely "knowledge of facts sufficient to put a plaintiff on notice that an injury has been sustained." *Kohl*, 977 S.W.2d at 532–33 (citing *Stanbury*, 953 S.W.2d at 678). Other decisions have specifically held that events other than a court order may put the plaintiff on notice of an injury due to an attorney's conduct. *See Kohl*, 977 S.W.2d at 532–33 (holding that letter from IRS and action in terminating attorney showed that client was on notice of potential injury); *Carvell*, 900 S.W.2d at 29 (holding that the knowledge requirement was met when the clients were sued regarding a deed that their attorney prepared); *Lufkin* 338 S.W.3d at 499 (holding that motion to suppress put the client on notice of potential injury); *Honeycutt*, 2007 WL 2200285, at *10 (holding that a petition to terminate alimony which caused client to terminate attorney evidenced that the client was on notice of potential injury); *Wilkins v. Dodson, Parker, Shipley, Behm & Seaborg*, 995 S.W.2d 575, 583 (Tenn. Ct. App. 1998) (holding that client was put on notice of potential problem with representation when client's adversary raised issue of statute of limitations in its answer); *Memphis Aero Corp. V. Swain*, 732 S.W.2d 608, 612 (Tenn. Ct. App. 1986) (holding that client was put on notice of potential problem with representation when he was sued). Therefore, a motion that specifically attacks the legality and enforceability of a contract drafted by an attorney puts a reasonable party on notice that the party has been injured by the drafting attorney's conduct. Accordingly, CAS was not entitled to "delay filing suit until all the injurious effects or consequences of the alleged wrong are actually known." *Kohl*, 977 S.W.2d at 532–33 (citing *Shadrick*, 963 S.W.2d at 733). Instead, CAS was required to file its legal malpractice suit within one year of being put on notice of a "potential problem" with Mr. Jones' representation. *Kohl*, 977 S.W.2d at 533.

At latest, we conclude that CAS was on notice of a "potential problem" with Mr. Jones' representation on November 22, 2006, when Cookeville filed its motion for summary judgment asserting the illegality of the contract. In addition, CAS suffered an actual injury on January 9, 2007, at the latest, when it was forced to defend Cookeville's motion for summary judgment. As such, the statute of limitations on CAS' malpractice claim began to run when both components were met, i.e., January 9, 2007. CAS commenced this legal malpractice action on October 27, 2010. Accordingly, CAS' legal malpractice suit was

commenced beyond the one-year time period set by the statute of limitations. Therefore, the grant of summary judgment dismissing this case was proper.

## V. Conclusion

The judgment of the Circuit Court is affirmed. Costs of this appeal are assessed to Appellant, Cardiac Anesthesia Services, P.L.L.C., and its surety.

_____
J. STEVEN STAFFORD, JUDGE