IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 24, 2014 Session

JOSEPH E. RICH, M.D. v. DAN WARLICK

Appeal from the Circuit Court for Davidson County
No. 08C1949     Ben H. Cantrell, Judge

No. M2013-01150-COA-R3-CV - Filed April 15, 2014

A doctor who became the subject of disciplinary proceedings by the Tennessee Medical Examiners Board filed a complaint for legal malpractice against the attorney who had represented him in those proceedings. The doctor asserted that the Board suspended his medical license for one year as a result of numerous acts of professional negligence by the attorney. The attorney filed a motion for summary judgment, denying that he was guilty of any professional negligence and contending that in any case, the doctor's complaint was barred by the one-year statute of limitations for legal malpractice. The trial court granted partial summary judgment to the attorney on the basis of the statute of limitations. The court ruled that the doctor suffered a legally cognizable injury when the attorney failed to disclose a list of proposed witnesses to the Administrative Law Judge assigned to conduct the evidentiary hearing, which was more than one year earlier than the doctor's filing of his legal malpractice complaint. The court accordingly held that the attorney could not be held liable for his failure to disclose the witnesses, or for any other acts that occurred more than one year prior to the filing of the malpractice complaint. The court certified its judgment as final for purposes of appeal under Tenn. R. Civ. P. 54.02. We affirm.

Tenn R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

G. Kline Preston, Nashville, Tennessee, for the appellant, Joseph E. Rich.

Byron K. Lindberg, Nashville, Tennessee, for the appellee, Dan Warlick.

## OPINION

## I. A DISCIPLINARY PROCEEDING

Dr. Joseph Edward Rich became the subject of a disciplinary proceeding before the Tennessee Board of Medical Examiners in June of 2005, for his allegedly unprofessional use of chelation therapy, intravenous hydrogen peroxide therapy and for inappropriately prescribing methadone to patients.[1] He hired attorney Daniel Warlick to represent him before the Board. The following account is largely derived from Dr. Rich's subsequently-filed legal malpractice complaint against Mr. Warlick. The dates of certain events are cited because they are relevant to Mr. Warlick's statute of limitations defense.

On February 3, 2006, the Administrative Law Judge (ALJ) assigned to conduct the evidentiary hearing entered an order requiring Dr. Rich to disclose all his proposed witnesses, including experts and proposed exhibits by April 24, 2006. Prior to February 3, Dr. Rich had sent Mr. Warlick a thirteen page letter outlining his views on the upcoming proceedings and including a list of exhibits that he wanted to have introduced, as well as a list of nine expert witnesses to testify on his behalf. Mr. Warlick did not disclose any of the witnesses or exhibits to the ALJ before the deadline.

Dr. Rich cited several other failures by Mr. Warlick to protect his interests in the disciplinary proceedings. For example, on July 13, 2006, the Board notified Mr. Warlick that it intended to present the affidavit of Benjamin Johnson, M.D. to the court and that Mr. Warlick was obligated to notify legal counsel if he wished to cross-examine Dr. Johnson. Mr. Warlick did not depose Dr. Johnson or take any steps to compel his live testimony at the upcoming hearing. Also, the Board served Mr. Warlick with its witness and exhibit list on July 19, 2006. He did not depose any of those witnesses.

The case advanced through a series of evidentiary and dispositional hearings, beginning on July 26, 2006. Although Dr. Rich has cited several other failures by Mr. Warlick to take appropriate actions to protect his interests between and during those hearings, we need not discuss them in any detail, for they are not directly relevant to the issues in this appeal. However, Mr. Warlick's failure to comply with the ALJ's order to disclose Mr. Rich's witnesses by August 24, 2006, and the subsequent order resulting from that failure became

---

[1]Chelation therapy involves the intravenous administration of a drug to bind to metals such as lead or iron that are present in the tissues, so that they may be excreted through the urine. Hydrogen peroxide intravenous therapy is administered to kill disease microorganisms, improve cellular function and promote the healing of damaged tissues. Both of these therapies are apparently considered quite controversial in medical circles.

central to the trial court's decision in the legal malpractice case.

On December 11, 2006, the Board filed a motion to exclude Mr. Warlick from calling witnesses or presenting evidentiary exhibits on Dr. Rich's behalf because of his failure to disclose those witnesses. Mr. Warlick did not respond to the motion. On December 21, 2006, the Administrative Law Judge entered an order granting the Board's motion. Mr. Warlick did not file a written motion to set aside the ALJ's order. Accordingly, the only witness to testify on Dr. Rich's behalf was Dr. Rich himself.

On April 23, 2007, Dr. Rich sent a letter to Mr. Warlick expressing his frustration and concern with the manner in which Mr. Warlick conducted his defense. Among other things, he complained that he made dozens of phone calls and sent "countless messages" to Mr. Warlick's office and never received a reply. He also complained that Mr. Warlick went ahead with one hearing in Dr. Rich's absence, despite his explicit instructions to reschedule that hearing. Dr. Rich further informed Mr. Warlick that he had retained another attorney, and that "I think we need to absolutely need to [sic] have a serious talk about where we go from here . . ."

On December 20, 2007, the ALJ entered a final order suspending Dr. Rich's medical license for one year and imposing certain conditions on its restoration, which order became the order of the Board. Dr. Rich sought judicial review of the order suspending his license, asserting that numerous irregularities in the Board proceedings warranted reversal, but the court was not convinced. On March 17, 2009, the Chancery Court filed an extensive and detailed memorandum and order, affirming the final order of the Board and upholding the suspension of Dr. Rich's license.[2]

## II. A COMPLAINT FOR LEGAL MALPRACTICE

On June 18, 2008, Dr. Rich filed a complaint for legal malpractice against Mr. Warlick in the Circuit Court of Davidson County. He claimed that if it were not for Mr. Warlick's negligence, his medical license would not have been suspended. The alleged acts of negligence included Mr. Warlick's failure to disclose the names of Dr. Rich's expert witnesses to the ALJ in accordance with the ALJ's order of February 3, 2006, his failure to move for relief from the order of December 21, 2006 excluding the introduction by Dr. Rich of witnesses and additional

---

[2]Dr. Rich appealed the Chancery Court's order to the Court of Appeals. We affirmed the Medical Board's finding that Dr. Rich had violated several statutes regulating medical practice, but we found that the Board had erred by failing to articulate the applicable standard of care, as required by Tenn. Code Ann. § 63-6-214(g). The Board appealed to the Supreme Court, which affirmed this court and remanded the matter for the Board to make the statutory findings. *Rich v. Tennessee Bd. of Med. Examiners*, 350 S.W.3d 919 (Tenn. 2011).

evidence, his failure to depose the Board's expert witnesses, and his failure to notify Dr. Rich of the final hearing date of December 6, 2007.

Mr. Warlick filed a motion for summary judgment, asserting two separate grounds for the dismissal of Dr. Rich's claim. First, he argued that the claim was barred by the one year statute of limitations for legal malpractice. Second, he contended that even if Dr. Rich's claim was not barred by the statute of limitations, Mr. Warlick was not guilty of any professional negligence because all the acts or omissions complained of were based on the honest exercise of his professional judgment.

Mr. Warlick submitted numerous documents in support of his motion, including his own affidavit, which stated his opinion "based upon a reasonable degree of legal certainty" that none of his actions were the proximate cause of Dr. Rich's injuries. Dr. Rich opposed the motion by filing the declaration of James Bradshaw, a Nashville attorney. Mr. Bradshaw (who represented Dr. Rich in the underlying case after Mr. Warlick withdrew) discussed each of the negligent acts and omissions alleged by Dr. Rich and declared that they all violated the standard of care for attorneys in Tennessee, and that if not for those violations, "Dr. Rich could have received a different result in his case before the Board."

The hearing on the motion was conducted on August 24, 2012. After extensive arguments by both sides, the court ruled from the bench, and its ruling was memorialized in an order filed on September 24, 2012. The court granted Mr. Warlick's motion for summary judgment in part and denied it in part. The court ruled that the affidavit of James Bradshaw raised a genuine issue of disputed fact as to whether Mr. Warlick's actions fell below the legal standard of care for attorneys in the State of Tennessee, and thus that Mr. Warlick was not entitled to summary judgment on that issue.

On the remaining issue, the court held that the statute of limitations barred action on some of the acts complained of in the complaint. The court ruled that the only alleged acts of negligence by Mr. Warlick that could be considered by the court for the purpose of liability were those that occurred one year before the filing of Dr. Rich's legal malpractice complaint on June 18, 2008. The court also declared its judgment to be final for purposes of appeal under 54.02 Tenn. R. Civ. P.

# III. ANALYSIS

Our decision on appeal turns entirely on the question of when Dr. Rich's cause of action for legal malpractice accrued. A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk Southern Railway Co.*, 271 S.W.3d at 84; *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). In our review, we must consider the evidence presented at the summary judgment stage in the light most favorable to the non-moving party, and we must afford that party all the reasonable inferences than can be drawn from such evidence. *Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Housing Authority v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001).

## A. The Statute of Limitations for Legal Malpractice

The statute of limitations for claims of professional malpractice is one year from the date of the incident giving rise to the claim. *See* Tenn. Code Ann. § 28-3-104(a)(2). When the claim is for legal malpractice, it can be difficult to know when the cause of action has accrued and, thus, when the statute of limitations has begun to run. In the leading case of *Carvell v. Bottoms*, 900 S.W.2d 23 (Tenn. 1995), the court stated that when a legal malpractice claim accrues depends upon a specific formulation of the "discovery rule," which developed through an earlier series of decisions that were rendered in the 1980s' and is described as follows:

> . . . the "legal malpractice discovery rule" is composed of two distinct elements: (1) the plaintiff must suffer, pursuant to the *Ameraccount* dicta, an "irremediable injury" as a result of the defendant's negligence; and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by defendant's negligence.

*Carvell v. Bottoms*, 900 S.W.2d at 28.

The court declared, however, that it could no longer approve of the adjective "irremediable" in the above formulation, because it "caused confusion from its inception and serves no useful purpose." *Carvell v. Bottoms*, 900 S.W.2d at 30. The court reasoned that litigation is a fluid enterprise, with multiple possibilities for reversals of seemingly firm dispositions along the way. The court accordingly ruled instead that the terms "legally cognizable injury" or "actual injury" should be used in that context.

Thus, the two distinct elements of the discovery rule are that the plaintiff must suffer a legally cognizable injury or an actual injury, and the plaintiff must know or in the exercise of reasonable diligence should have known that this injury was caused by the defendant's negligent or wrongful conduct. *Kohl v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 2008).

"An actual injury occurs when there is a loss of a legal right, remedy or interest, or the imposition of a liability. An actual injury may also take the form of the plaintiff being forced to take some action or otherwise suffer 'some actual inconvenience' such as incurring an expense, as a result of the defendant's negligent or wrongful act." *Kohl v. Dearborn & Ewing*, 977 S.W.2d at 532.

In the case before us, the trial court made the following specific findings:

> The Court further finds that based on the undisputed material facts Plaintiff Rich, on April 23, 2007, knew or upon the exercise of reasonable diligence should have known that he suffered a legally cognizable injury as a result of the alleged wrongful acts or omissions of defendant Warlick as set forth in the Complaint. The Court finds that the December 21, 2006 Order of the Board precluding Dr. Rich from presenting proof, including expert and fact witnesses and exhibits, is a legally cognizable injury.

> The Court further finds that Plaintiff Rich, with the knowledge that he suffered a legally cognizable injury as a result of the alleged conduct of Mr. Warlick, failed to file the present lawsuit within the one-year statue of limitations period for legal malpractice claims. Rather, Plaintiff Rich filed the present lawsuit, in June 18, 2008.

> Accordingly, the Court holds that all of causes of action arising out of the acts or omissions of Mr. Warlick complained of by Plaintiff Rich in his Complaint that occurred prior to June 18, 2007 are barred by the statue of limitations, including [a list of allegations regarding acts occurring before the critical date].

> The Court finds that any causes of action arising out of the acts or omissions of Mr. Warlick complained of by Plaintiff Rich in his Complaint that occurred on or after June 18, 2007 are not barred by the statute of limitations.

Mr. Warlick does not appeal the trial court's decision to deny his motion for summary judgment on the question of negligence. He argues, rather, that the trial court was correct to find that Dr. Rich suffered a legally cognizable injury more than one year before he filed his malpractice claim, thus barring the court from considering any allegedly negligent acts committed by Mr. Warlick prior to June 18, 2007.[3]

---

[3]Mr. Warlick does not take the position on appeal that Dr. Rich suffered an actual or legally cognizable injury when he failed to submit his client's list of expert witnesses to the ALJ. He argues, rather, that the injury occurred on December 21, 2006, when the ALJ excluded the testimony of any such witnesses,

For his part, Dr. Rich argues on appeal that he did not suffer a legally cognizable injury as the result of his representation by Mr. Warlick until December 20, 2007, when the Board entered its final order suspending his medical license, thereby rendering his legal malpractice complaint timely for all the acts committed by Mr. Warlick during the period that he represented Dr. Rich. He reasons that all earlier orders should be deemed interlocutory because they were not final and the ALJ could have changed his mind at any time prior to the entry of its final order about excluding the testimony of Dr. Rich's expert witnesses.

In a number of cases, however, our courts have found that a plaintiff in a legal malpractice claim suffered a legally cognizable injury for the purposes of the statute of limitations well before the entry of a final order against him in the underlying proceeding. For example, the plaintiffs in *Kohl v. Dearborn & Ewing* acted on erroneous tax advice they received from their attorney about a rollover from an individual retirement account. When the Internal Revenue Service sent them a letter questioning their income tax return, they wrote to the attorney who had given them the erroneous advice to inform him that they had retained a different attorney to handle their tax work.

Seventeen months after that letter was sent, the plaintiffs filed a legal malpractice complaint against the attorney who gave them the bad advice. The trial court dismissed their complaint on summary judgment because of the running of the statute of limitations. The Supreme Court affirmed. The court found that the plaintiffs suffered a legally cognizable injury when their accountant had to respond to the request for information from the IRS, reasoning that "the plaintiffs suffered an actual injury for the purposes of the discovery rule when they began to incur expenses, or at least had to take some action, as a result of the defendants' negligent advice." *Kohl v. Dearborn & Ewing*, 977 S.W.2d at 533.

The court noted that when the plaintiffs received the letter from the IRS, no formal action had yet been taken against them, but it stated that "[a] plaintiff may not delay filing suit until all the injurious effects or consequences of the alleged wrong are actually known to the plaintiff." *Kohl v. Dearborn & Ewing*, 977 S.W.2d at 533 (citing *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998)). The court also found that the knowledge requirement of the discovery rule was satisfied by the plaintiffs' letter to the defendant attorney informing him of the change of representation, because it showed that they knew that there was a potential problem with the rollover. Thus, the statute of limitations began to run on the date the letter was sent. *Id.*

---

and that Dr. Rich became aware of his injury no later than April 23, 2007, when he wrote a letter to Mr. Warlick complaining about his conduct of the case, and informing him that Dr. Rich had retained another attorney.

The more recent case of *Cardiac Anesthesia Services v. Jones*, 385 S.W.3d 530 (Tenn. Ct. App. 2012), involved the drafting of a contract between an anesthesia practice group and a medical center. The contract included a provision that could be read as requiring the splitting of fees between the parties, which is prohibited by Tenn. Code Ann. § 63-6-225. The practice group sued, alleging that the medical center breached the contract, and the medical center filed a motion for summary judgment, contending that the contract was illegal, and therefore unenforceable. Although the trial court ultimately ruled that Tenn. Code Ann. § 63-6-225 did not apply to the contract at issue, the practice group incurred significant expense defending against the motion.

The practice group subsequently filed a legal malpractice complaint against the attorney who had drafted the contract, and the attorney filed a motion for summary judgment on the basis of the statute of limitations. The trial court granted the defendant attorney's motion and this court affirmed. We found, consistent with the Supreme Court's holding in *Kohl v. Dearborn & Ewing,* that the inconvenience and expense of defending against the medical center's motion for summary judgment constituted a legally cognizable injury, and that the filing of the motion put the practice group on notice that there was a problem with the way the contract was drafted. *Cardiac Anesthesia Services v. Jones*, 385 S.W.3d at 541.

The case of *Honeycutt v. Wilkes*, W2007-00185-COA-R3-CV, 2007 WL 2200285 (Tenn. Ct. App. Aug. 2, 2007) (rule 11 perm. app. denied Dec. 27, 2007) involved a marital dissolution agreement (MDA) drafted by the defendant attorney. The attorney told her client, Ms. Honeycutt, that Tennessee law required the inclusion in the MDA of a provision that her former husband's alimony obligation would be terminated if she "cohabitates with a man not related to her." The attorney assured her, however, that the provision did not prevent her from having a relationship with a man so long as she did not receive financial support from him and maintained her home and driver's license in Tennessee.

When Ms. Honeycutt's former husband subsequently learned that she had entered into a romantic relationship with a man in Florida and shared his bed more than half the time, he filed a petition in the Tennessee court to terminate his alimony obligation. Ms. Honeycutt then discharged her attorney, and retained another attorney to defend her against the termination petition. The trial court denied Mr. Honeycutt's petition to terminate alimony, but this court reversed. After the Tennessee Supreme Court denied Ms. Honeycutt's petition to appeal, she filed a complaint for legal malpractice.

As in *Kohl* and *Cardiac Anesthesia Services*, the disposition of the malpractice case turned on the question of the statute of limitations. Ms. Honeycutt contended that she did not suffer an injury, and therefore her cause of action did not accrue, until this court reversed the

trial court. The trial court found, however, that her cause of action accrued when she wrote the letter discharging the defendant attorney. We affirmed. We reasoned that Ms. Honeycutt suffered an actual injury when she was forced to hire another attorney and to incur the expenses required to defend herself against Mr. Honeycutt's petition to terminate his alimony obligation. *Honeycutt*, 2007 WL 2200285 at *7.

Dr. Rich offers us a counter-example in *Cherry v. Williams*, 36 S.W.3d 78 (Tenn. Ct. App. 2000), a case in which this court held that the filing of a final order in the trial court was the legally cognizable injury that triggered the running of the statute of limitations. The underlying proceeding in that case was a suit for breach of fiduciary duty against a financial consultant, Mr. Cherry. The plaintiff in the underlying suit offered to settle for amounts between $15,000 and $25,000. Mr. Cherry's attorneys recommended against settlement, and he followed their advice. The trial of the case resulted in a judgment of $75,000 against Mr. Cherry, which included punitive damages. He appealed the judgment. On appeal, this court affirmed the award of compensatory damages, but increased the punitive damages award, resulting in a total judgment of $150,000.

Mr. Cherry's legal malpractice complaint against his attorneys was filed more than one year after the entry of the order in the trial court, but less than a year after the entry of this court's opinion affirming it. He argued that he did not suffer a legally cognizable injury until this court affirmed the trial court's judgment. Both the trial court and this court rejected that argument. We noted that "[i]n litigation, the most easily identifiable time when rights, interests, and liabilities become fixed is when a court enters judgment," and "[t]hus, when a judgment is entered, a 'legally cognizable injury' occurs." *Cherry v. Williams*, 36 S.W.3d at 84-85.

None of the arguments raised by the parties in *Cherry v. Williams* suggested, however, that Mr. Cherry had suffered a legally cognizable injury any earlier than the entry of the trial court's judgment. Further, to say that a legally cognizable injury occurs when a judgment is entered is not the same as saying that it **only** occurs upon the entry of a judgment. In fact, *Kohl v. Dearborn & Ewing* and the other cases we have cited stand for the opposite proposition. Keeping these principles in mind, we now turn to the facts of the case before us.

## B. The Application of the Statute to the Present Case

The record shows that the Administrative Law Judge entered an order requiring Dr. Rich to disclose all his proposed witnesses by April 24, 2006. Dr. Rich had previously sent Mr. Warlick a letter that included a list of nine expert witnesses that he wanted to testify on his behalf. Mr. Warlick did not disclose any of the witnesses proffered by Dr. Rich or any other witnesses to the ALJ before the deadline. Mr. Warlick does not assert that this failure amounted, in itself, to an "actual injury" or a "legally cognizable injury." We agree because Dr.

Rich did not immediately lose any rights. At that point, his ability to utilize expert testimony was only potentially threatened by Mr. Warlick's failure to disclose his witnesses.

In response to a motion by the Medical Board, however, the ALJ entered an order on December 21, 2006, that prohibited Mr. Warlick from calling any expert witnesses on Dr. Rich's behalf because of his failure to meet the deadline. The ALJ's order deprived Dr. Rich of a legal right that tends to be of critical importance in proceedings involving professional licensing - the right to defend oneself through the use of expert testimony. Thus, that order satisfied the injury component of a claim for legal malpractice.

On April 23, 2007, Dr. Rich sent a letter to Mr. Warlick in which he expressed deep misgivings about the quality of the representation that Mr. Warlick was providing, including his failure to provide the ALJ with his witness list. The content of that letter satisfied the second element for the accrual of a cause of action for legal malpractice, that the plaintiff knows, or should have known in the exercise of reasonable diligence, that an injury was caused by defendant's negligence. Dr. Rich's letter details his knowledge of the failings of Mr. Warlick in his representation, and the fact that he had consulted another lawyer gave him the opportunity to inquire as to the potential consequences of those failings.

Additionally, Dr. Rich announced in the letter that because of the many decisions Mr. Warlick had made without his knowledge or agreement, he had retained another attorney, Al Augustine, "in an effort to try and minimize this situation." As we noted above, our Supreme Court has declared that "[a]n actual injury may also take the form of the plaintiff being forced to take some action or otherwise suffer 'some actual inconvenience' such as incurring an expense, as a result of the defendant's negligent or wrongful act." *Kohl v. Dearborn & Ewing*, 977 S.W.2d at 532. Dr. Rich incurred additional expenses by his decision to hire another attorney because of Mr. Warlick's representation.

Dr. Rich notes on appeal that his letter shows that despite his criticisms, he, unlike the plaintiff in *Kohl v. Dearborn & Ewing*, continued to employ the services of Mr. Warlick. He argues that it is nothing out of the ordinary for a party to hire another attorney to serve as the "second chair" in a case important enough to warrant it. However, Dr. Rich's letter shows he was aware that Mr. Warlick's actions and omissions had injured him, whatever his reasons for not immediately discharging Mr. Warlick.

We accordingly affirm the judgment of the trial court that the statute of limitations bars a malpractice cause of action based on acts of alleged negligence that occurred more than one year prior to the filing of the lawsuit.

**IV.**

The judgment of the trial court is affirmed. We remand this case to the Circuit Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant, Dr. Joseph Rich.

_____
PATRICIA J. COTTRELL, JUDGE