IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 23, 2025 Session

## CELESTE LACHAPELLE AS THE BENEFICIARY OF THE WILL OF JAMES RUSSELL PACE v. BLANCHARD E. TUAL ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-3792-23      Felicia Corbin Johnson, Judge**

———————————————————

### No. W2024-01234-COA-R3-CV

———————————————————

Appellant sued the law firm that prepared a will on behalf of her fiancé for professional negligence after an out-of-state will contest resulted in the invalidation of the will. The trial court concluded that Appellant's claim accrued when she was forced to respond to the will contest and not when the will was actually held to be invalid. Thus, Appellant's action was filed after the one-year limitations period had expired, and the trial court granted summary judgment for the law firm. Finding no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which KENNY ARMSTRONG, and VALERIE L. SMITH, JJ., joined.

John Timothy Edwards, Memphis, Tennessee, for the appellant, Celeste LaChapelle.

Lauran G. Stimac, Logan A. Klauss, Richard Glassman, Jonathan S. Stokes and Brian D. Garrott, Memphis, Tennessee, for the appellees, Tual Graves, PLLC, and Blanchard E. Tual.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

In November 2020, Plaintiff/Appellant Celeste LaChapelle ("Appellant") hired Defendants/Appellees, Tennessee-based attorney Blanchard E. Tual and law firm Tual

Graves, PLLC (collectively, "Appellees"), on behalf of her fiancé, James Russell Pace. At the time, Mr. Pace was hospitalized in Tennessee and sought legal counsel to prepare a will. Mr. Pace was a resident of Mississippi, and the majority of his estate was located in Mississippi. Mr. Pace's signing of the will was witnessed remotely by Mr. Tual and two witnesses via video conference; the notarization of the witnesses' signatures was not observed by Mr. Pace. Sadly, Mr. Pace died a few days after the will was executed.

As executrix of Mr. Pace's estate, Appellant filed a petition to probate the will in the Chancery Court of Madison County, Mississippi ("the probate court"), on December 15, 2020. On March 15, 2021, Mr. Pace's father and brother ("the Paces") filed a complaint to set aside the will based in part on a failure to comply with Mississippi attestation requirements.[1] Through Mississippi-based counsel, Appellant filed an answer denying that the Paces were entitled to any relief on May 10, 2021.

The Paces subsequently filed a motion for summary judgment on July 16, 2021, arguing that the undisputed facts established that the will was improperly executed and witnessed and thus invalid under Mississippi law. In her October 8, 2021 response in opposition, Appellant argued that the will satisfied Tennessee law pursuant to Tennessee Executive Orders relaxing testation requirements due to the COVID-19 pandemic[2] and should be found valid in Mississippi under the general principle of comity. Alternatively, Appellant argued that equity allowed the probate court to find the will valid based on substantial compliance with Mississippi requirements, as strict compliance was rendered impossible by the COVID-19 pandemic.

The probate court granted summary judgment for the Paces by order of November 18, 2021.[3] The probate court found that the will failed to comply with the Mississippi requirement that a will be attested to in the physical presence of the testator. The probate court determined that this noncompliance was not excused by the circumstances related to Mr. Pace's hospitalization and rendered the will invalid. The probate court further concluded that whether the will was properly executed according to Tennessee law was immaterial, as Mississippi expressly disavowed the principle of comity in relation to testamentary dispositions.

Appellant, "as the Beneficiary of the Will of James Russell Pace," filed a complaint for professional negligence in the Circuit Court of Shelby County, Tennessee ("the trial

---

[1] Allegations of undue influence and lack of capacity were also raised by the Paces and later abandoned.

[2] *See* 2020 Exec. Order No. 26 (April 9, 2020) (facilitating the remote notarization and witnessing of documents); *see also* 2020 Exec Order Nos. 37 (May 12, 2020), 52 (June 29, 2020), 61 (August 28, 2020), 66 (October 28, 2020) (ultimately extending the provisions of Executive Order 26 through December 29, 2020).

[3] The order invalidating the November 2020 will was rendered final for purposes of appeal by order dated November 29, 2021. *See* Tenn. R. Civ. P. 54.02.

court") on September 14, 2023.[4] Appellant explained that, as a result of the invalidation of the November 2020 will, the distribution of Mr. Pace's estate was governed by a will executed in January 2020, which awarded her "substantially" fewer assets than the will prepared by Appellees. The complaint alleged that "but for the negligence of [Appellees], [Appellant] would not have suffered [the] loss of substantial assets, both real and personal, which she would have received had the November 6, 2020 Will been upheld." Appellant asserted damages including the "loss of commercial real estate and improvements thereon, investment accounts, rent stream on the commercial property, valuable automobiles, and other personalty," as well as "substantial attorney's fees and costs necessitated by challenges to her entitlement to assets under the will now being probated as a result of [the] invalidation of the November 2020 Will."

Arguing that Appellant's claim was time-barred, Appellees moved to dismiss the complaint for the failure to state a claim in October 2023. Appellees asserted that the one-year statute of limitations on legal malpractice claims began running as early as January or February 2021, based on a statement in the complaint that: "In late January or February of 2021, [Appellant] was advised that there might be a problem with the legality of the Will." At the latest, Appellees asserted that Appellant's claim accrued in May 2021, when Appellant filed her answer to the will contest in the probate court. Thus, the limitations period ended, at the latest, in May 2022. Appellees explained that the parties' July 20, 2022 Tolling Agreement did not affect the timeliness of Appellant's complaint, as it was executed after the expiration of the limitations period and did not purport to revive the statute of limitations.[5]

---

[4] In the complaint, Appellant stated that she had initially "filed a timely appeal" of the probate court's order "after consulting with two experienced lawyers in a firm which practices Mississippi estate, trust, and probate law[,]" but ultimately "dismissed such appeal based upon the opinions obtained."

[5] The Agreement stated, in relevant part:

> WHEREAS, P alleges to have a cause of action against D and suit has not yet been filed; and
> WHEREAS, and the parties agree that the statute of limitations barring any action by P would otherwise run on or before November 29, 2022.
> . . . .
> NOW, THEREFORE, The Parties in consideration of the mutual promises contained herein, agree as follows:
> 1. Any and all statutes of limitations, laches, and other time-related defenses (whether by contract or by law) that would bar the filing of the claims, potential claims, or counter claims of any of The Parties are tolled during the term of this Agreement. The term of this Agreement shall commence from the date of this Tolling Agreement and shall continue for a period of time through and including the 30th day of July 2023. In addition, any party to this Agreement may unilaterally terminate it upon thirty days written notice to all parties.
> 2. The Parties do not intend by this Agreement to modify, release, or waive any of their rights, obligations, claims or defenses except as expressly set forth herein. Any claims as to which the applicable statute of limitations has already expired are not revived hereby.

In her response, Appellant argued that a speculative statement by Mr. Pace's non-attorney brother-in-law that there "might be a problem with the Will" did not provide her with facts sufficient to put her on notice of Appellees' breach of duty. She alleged that her notice was further delayed by statements from Mr. Tual that the will was valid under Tennessee law. Instead, Appellant argued that she only became aware that she had suffered an injury as a result of Appellees' negligence when the will was found invalid under Mississippi law by the probate court. As such, Appellant argued that her legal malpractice cause of action did not accrue until November 2021. Thus, the July 2022 Tolling Agreement effectively tolled the limitations period on her claim and her September 2023 complaint was timely. With her response, Appellant included an affidavit "to provide context to when [she] received notice that James Pace's Will might be invalid."[6]

Appellees filed a reply, arguing that to the extent Appellant's reference to Appellees' "assurances to her that the will was valid under <u>Tennessee law</u> is intended to be one of fraudulent concealment such that the statute of limitations was tolled, those allegations, which are noticeably absent from the Complaint, do not rise to the level set by Tennessee case law for tolling." Appellant amended her complaint on January 18, 2024, to include a claim for fraudulent concealment based on her allegation that Appellees "misrepresented to [her] that the Will [Appellees] had prepared for probate in Mississippi was lawfully witnessed and enforceable under the laws of Tennessee and Mississippi."

---

This Agreement will not prevent D from raising a statute of limitations defense, which may have expired pursuant to the applicable statute of limitations before execution of this Agreement and will not prevent D from asserting any other applicable defenses to such claims.

[6] As relevant, Appellant's affidavit stated:

> 3.    At some point in time, and I do not remember the exact date, [Mr. Pace's brother-in-law] told me that "There might be a problem with the Will." He did not give me any further information nor did he elaborate as to the nature of the problem.. . . .
> 6.    Throughout the litigation . . . [Mr. Tual] repeatedly assured me that James Pace's Will was valid under Tennessee law. . . . .
> 7.    I trusted [Mr.] Tual, and I relied upon what he told me, as well as what he testified to, under oath, in opposition to the Motion for Summary Judgment. Mr. Tual repeatedly assured me that I should not be concerned about any challenges to the validity of the Will and even executed an Affidavit, under oath, which was filed with the [probate court] in support of my Response to the Motion for Summary Judgment.

Mr. Tual's May 3, 2021 affidavit filed in the probate court was also included with Appellant's response to the motion to dismiss. While providing a timeline of events surrounding Mr. Pace's signing of the will, Mr. Tual stated: "I explained to [Appellant] that Tennessee Governor Bill Lee had issued an Executive Order whereby the witnessing and notarization of documents during the Covid Pandemic could be done remotely[,]" and "I explained to [Mr. Pace] that this remote witnessing and notarization was done pursuant to Tennessee Governor Bill Lee's Executive Order." Mr. Tual provided a second affidavit in September 2021 that contained a more detailed explanation of the attestation of the will but did not discuss any statements made to Appellant or Mr. Pace.

- 4 -

Appellees renewed their motion to dismiss and further argued that Appellant failed to plead her fraudulent concealment claim with the requisite particularity and only asserted an allegedly faulty legal opinion rather than a misrepresentation of fact, such that the limitations period was not tolled. In addition to renewing her opposition to the motion, Appellant argued that her fraudulent concealment claim involved Appellees' failure to disclose the fact that Mississippi did not provide for the remote attestation of wills.

The matter was heard over three days in December 2023, March 2024, and June 2024. The parties ultimately agreed that considering the numerous documents included as exhibits to the various pleadings would convert Appellees' motion to dismiss into a motion for summary judgment.

The trial court entered an order granting summary judgment to Appellees on August 15, 2024.[7] The trial court ruled that Appellant's cause of action accrued in May 2021, when she filed her answer to the will contest in the probate court. The trial court also found that neither Mr. Tual's statements regarding the merits of the will contest nor the parties' Tolling Agreement tolled the statute of limitations. Thus, Appellant's September 2023 professional negligence complaint was filed after the limitations period had expired and the action was time-barred.

Appellant filed a timely notice of appeal.

## II. ISSUES PRESENTED

Appellant raises the following issues, taken directly from her brief:

A. Did the trial court err in granting summary judgment based upon [the] expiration of the one-year statute of limitations T.C.A. § 28-3-104?
> 1. The trial court erred in failing to consider Plaintiff's unrebutted Affidavit creating an issue of fact as to whether Plaintiff knew or should have known that Defendants' malfeasance had caused her harm. (Part two of accrual doctrine).
> 2. No proof having been taken in the case; the Trial Court failed to review the record in the light most favorable to Plaintiff drawing reasonable inferences therefrom.
> 3. The Trial Court's equivocation on the date for accrual (3 dates identified) of the statute of limitations precludes application of that statute.[8]

B. Did the contested pleading filed by an adverse, interested party provide

---

[7] The transcript of the June 2024 hearing was incorporated into the written order.
[8] In her reply brief, Appellant raises additional sub-issue A.4.: "The Trial Court erred in failing to find that the unrebutted allegation of fraudulent concealment created an issue of material fact."

- 5 -

"facts" legally sufficient to put Plaintiff on notice of Defendants' malfeasance?

### III. STANDARD OF REVIEW

We review the trial court's grant of summary judgment de novo, with no presumption of correctness. ***Rye v. Women's Care Ctr. of Memphis, MPLLC***, 477 S.W.3d 235, 250 (Tenn. 2015) (citing ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997); ***Abshure v. Methodist Healthcare-Memphis Hosp.***, 325 S.W.3d 98, 103 (Tenn. 2010)). As part of our review, we must "take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." ***Byrd v. Hall***, 847 S.W.2d 208, 211 (Tenn. 1993) (citations omitted), *holding modified by* ***Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1 (Tenn. 2008), *holding modified by* ***Rye***, 477 S.W.3d 235. We similarly accept the evidence presented by the nonmoving party as true and resolve any doubts about the existence of a genuine issue of material fact in its favor. ***TWB Architects, Inc. v. Braxton, LLC***, 578 S.W.3d 879, 887 (Tenn. 2019) (citing ***Martin v. Norfolk S. Ry.***, 271 S.W.3d 76, 84 (Tenn. 2008)).

A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, it "may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." ***Rye***, 477 S.W.3d at 264. When a motion for summary judgment is made and supported as provided in Rule 56, the nonmoving party may not rest on the allegations or denials in its pleadings. ***Id.*** at 265. Instead, the nonmoving party must respond with specific facts showing that there is a genuine issue of material fact to be resolved at trial. ***Id.***

A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." ***Byrd***, 847 S.W.2d at 215. A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." ***Id.*** "Summary [j]udgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." ***Brooks Cotton Co. v. Williams***, 381 S.W.3d 414, 418–19 (Tenn. Ct. App. 2012) (quoting ***Landry v. S. Cumberland Amoco***, No. E2009-01354-COA-R3-CV, 2010 WL 845390, at *3 (Tenn. Ct. App. March 10, 2010)).

### IV. ANALYSIS

#### A. Statute of Limitations

To be timely, a legal malpractice action must be brought within one year of the accrual of the claim. *See* Tenn. Code Ann. § 28-3-104(c)(1). Accrual of a legal malpractice claim is governed by a two-part discovery rule: "(1) the plaintiff must suffer legally cognizable damage—an actual injury—as a result of the defendant's wrongful or negligent conduct, and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by the defendant's wrongful or negligent conduct." *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998) (citing *Carvell v. Bottoms*, 900 S.W.2d 23, 28–30 (Tenn. 1995)).

According to Appellant, "the default point of actual injury in the context of litigation malpractice" is the entry of a judgment. *Story v. Bunstine*, 538 S.W.3d 455, 470 (Tenn. 2017) (citing *Cherry v. Williams*, 36 S.W.3d 78, 83–85 (Tenn. Ct. App. 2000)). But the Tennessee Supreme Court has recognized that the courts of this state "have consistently declined to adopt the entry of a final judgment as the absolute, bright-line point of injury and accrual."[9] *Id.* (collecting cases). Indeed, our high court deemed such a rule "too simplistic." *Id.* at 471.

The Tennessee Supreme Court has therefore provided the following guidance regarding the injury prong:

> An actual injury occurs when there is the loss of a legal right, remedy or interest, or the imposition of a liability. *See LaMure v. Peters*, 122 N.M. 367, 924 P.2d 1379, 1382 (1996). An actual injury may also take the form of the plaintiff being forced to take some action or otherwise suffer "some actual inconvenience," such as incurring an expense, as a result of the defendant's negligent or wrongful act. *See State v. McClellan*, 113 Tenn. 616, 85 S.W. 267, 270 (1905) ("[A negligent act] may not inflict any immediate wrong on an individual, but . . . his right to a remedy . . . will [not] commence until he has suffered some actual inconvenience. . . . [I]t may be stated as an invariable rule that when the injury, however slight, is complete at the time of the act, the statutory period then commences, but, when the act is not legally injurious until certain consequences occur, the time commences to run from the consequential damage . . . ."). However, the injury element is not met if it is contingent upon a third party's actions or amounts to a mere possibility. *See Caledonia Leasing v. Armstrong, Allen*, 865 S.W.2d 10, 17 (Tenn. App. 1992).

---

[9] Moreover, while the potential significance of Appellees' alleged malpractice was brought to Appellant's attention during litigation in the probate court, there can be no dispute that the relevant conduct—the improper preparation of Mr. Pace's will—did not occur during the course of litigation, further limiting the applicability of the "final judgment" argument put forth by Appellant.

- 7 -

***Kohl***, 977 S.W.2d at 532 (alterations in original). A plaintiff is not entitled to "delay filing suit until all the injurious effects or consequences of the alleged wrong are actually known[.]" ***Id.*** (citations omitted). Instead, the limitations period begins to run when any damages become apparent, "even though the amount may be small in comparison to the amount of damages eventually suffered." ***Honeycutt v. Wilkes, McCullough & Wagner***, No. W2007-00185-COA-R3-CV, 2007 WL 2200285, at \*4 (Tenn. Ct. App. Aug. 2, 2007) (citing ***Denley v. Smith***, Shelby Law No. 48, 1989 WL 738, at \*4 (Tenn. Ct. App. W.S. Jan. 9, 1989)).

The second prong of the discovery rule considers the plaintiff's knowledge that he or she had suffered an injury as a result of the defendant's conduct. Our supreme court has explained:

> The knowledge component of the discovery rule may be established by evidence of actual or constructive knowledge of the injury. ***Carvell***, 900 S.W.2d at 29. Accordingly, the statute of limitations begins to run when the plaintiff has actual knowledge of the injury as where, for example, the defendant admits to having committed malpractice or the plaintiff is informed by another attorney of the malpractice. Under the theory of constructive knowledge, however, the statute may begin to run at an earlier date—whenever the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct. ***Id.*** We have stressed, however, that there is no requirement that the plaintiff actually know the specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard. ***Shadrick [v. Coker]***, 963 S.W.2d [733,] 733 [(Tenn. 1998)]. Rather, "the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." ***Carvell***, 900 S.W.2d at 29 (quoting ***Roe v. Jefferson***, 875 S.W.2d 653, 657 (Tenn. 1994)). "It is knowledge of facts sufficient to put a plaintiff on notice that an injury has been sustained which is crucial." ***Stanbury [v. Bacardi]***, 953 S.W.2d [671,] 678 [(Tenn. 1997)].

***Kohl***, 977 S.W.2d at 532–33.

"Defenses based on a statute of limitations are particularly amenable to summary judgment motions[,]" because, like here, the facts are often not in dispute. ***Cherry***, 36 S.W.3d at 83 (citing ***Creed v. Valentine***, 967 S.W.2d 325, 327 (Tenn. Ct. App. 1997); ***Allied Sound, Inc. v. Neely***, 909 S.W.2d 815, 820 (Tenn. Ct. App. 1995)). Indeed, the only question in this case involves the analysis of the undisputed timeline of events in the probate court under the legal principles espoused in the discovery rule. To prevail on their motion for summary judgment, Appellees must establish as a matter of law that Appellant

was injured and either knew or should have known sufficient facts to put her on notice that the injury was caused by Appellees' conduct more than one year prior to the filing of this malpractice action on September 14, 2023.

Several cases are instructive to our analysis. In ***John Kohl & Co., P.C. v. Dearborn & Ewing***, the plaintiffs received tax advice regarding a profit-sharing plan and the rollover and contribution of retirement accounts from the defendants in 1984. 977 S.W.2d at 531–32. In September 1988, the Internal Revenue Service ("IRS") sent a letter to the plaintiffs questioning their income reporting. *Id.* at 531. The plaintiffs' accountant responded to the IRS letter on October 19, 1988. *Id.* On October 24, 1988, another of the plaintiffs' attorneys wrote a letter to the defendants listing the defendants' retirement plan advice as the basis of the IRS's review. *Id.* The plaintiffs fired the defendants and retained new counsel, before eventually filing a malpractice action in 1990. *Id.* While the defendants did not contest liability in relation to the profit-sharing plan advice, they contended that the claim regarding the retirement plan advice was barred by the statute of limitations. *Id.* The trial court, Court of Appeals, and Tennessee Supreme Court agreed. *Id.* at 531–32. Our supreme court concluded that the plaintiffs had suffered an actual injury in October 1988, when their accountant was required to respond to the IRS letter. *Id.* at 533. Although no formal action had yet been taken by the IRS, the accountant's response marked when the plaintiffs "began to incur expenses, or at least had to take some action, as a result of the defendants' negligent advice." *Id.* The court further concluded that it was the attorney's letter to the defendants that marked when the plaintiffs knew or should have known that the injury was the result of the defendants' advice. *Id.* As the court explained, "it was unnecessary for the plaintiffs to have been aware that there had been a breach of the appropriate legal standard in order to be deemed to have discovered their right of action[.]" *Id.* Thus, the plaintiffs did not need to know that the defendants had been negligent; instead they "needed only to be aware of facts sufficient to put them on notice that an injury had been sustained as a result of [the defendants'] advice." *Id.* With their claim having fully accrued in October 1988, the plaintiffs' 1990 malpractice action was untimely.

Similarly, the plaintiff in ***Honeycutt v. Wilkes, McCullough & Wagner*** sued her former attorney for negligent advice regarding a cohabitation provision included in the marital dissolution agreement approved by the attorney. 2007 WL 2200285, at *2. Arguing that she had violated the provision, the plaintiff's former husband sought to terminate his alimony payments in May 2001. *Id.* at *1. The plaintiff discharged the attorney by letter in November 2001; the plaintiff complained that both the inclusion of the cohabitation provision and her subsequent conduct allegedly breaching the provision had been based on the attorney's advice. *Id.* at *2. The plaintiff then hired new counsel and opposed the petition to terminate alimony. *Id.* The petition was initially denied by the trial court in November 2002 but eventually granted by the Court of Appeals in December 2003; permission to appeal to the Tennessee Supreme Court was denied in June 2004. *Id.* The plaintiff then sued the original attorney for malpractice in July 2004. *Id.* The plaintiff argued that she did not suffer any actual injury until December 2003, when the petition was

granted on appeal. *Id.* at \*7. Instead, this Court determined that the plaintiff's injury occurred in May 2001, when she was forced to incur additional attorney's fees in opposing her former husband's petition. *Id.* at \*6. Even though the loss of alimony added to her damages, it was in defending against the petition that the plaintiff "suffered the actual inconvenience and expense" that gave rise to her malpractice claim. *Id.*

The plaintiff's knowledge that she had suffered an injury as a result of her former attorney's negligence was established by her November 2001 letter expressing her displeasure with the attorney's advice. *Id.* at \*2. According to the Court of Appeals, the letter revealed that the plaintiff "knew that her ex-husband was challenging her interpretation of the cohabitation provision, that [the attorney] had advised her about the meaning of the provision, and that there was at least a possibility that her alimony payments would be terminated because of [the attorney's] advice." *Id.* at \*8. Again, "it was not necessary for [the plaintiff] to know whether [the attorney] had breached relevant standards. [The plaintiff] had notice of the injury, and she knew that it had been sustained as a result of her attorney's advice." *Id.* at \*9. The plaintiff, having this knowledge, "could not wait until an adverse judgment was rendered on the issue to file her suit for malpractice." *Id.* (citing ***Bradson Mercantile, Inc. v. Crabtree***, 1 S.W.3d 648, 657–58 (Tenn. Ct. App. 1999) (finding that client knew that attorney "may have been" guilty of negligence even though the client believed that it could prevail in the underlying suit and the trial court had not ruled on the client's alternative claims); ***Wilkins v. Dodson, Parker, Shipley, Behm & Seaborg***, 995 S.W.2d 575, 583 (Tenn. Ct. App. 1998) (holding that when the client's adversary in an underlying suit raised the statute of limitations as a defense in its answer, the client should have known that his attorney "may have" committed malpractice by not filing the suit within the limitations period); ***Memphis Aero Corp. v. Swain***, 732 S.W.2d 608, 612 (Tenn. Ct. App. 1986) (ruling that client knew when he was sued that there was an indication that his attorney had not performed his duties in a proper manner)). Thus, the plaintiff's July 2004 malpractice action was filed more than one year after the accrual of her claim.

Here, the trial court determined that Appellant's legal malpractice claim accrued more than one year before her complaint was filed.[10]

---

[10] Appellant argues that the trial court's oral statements during the June 2024 hearing conflict with this written ruling, such that a genuine dispute of material fact exists, precluding summary judgment. She points to the trial court's consideration of the Paces' July 16, 2021 motion for summary judgment as the date Appellant gained constructive notice of her claim and Appellant's October 8, 2022 response thereto as the date Appellant suffered an actual injury. Pursuant to the trial court's obligation to view the evidence in the light most favorable to the nonmoving party, Appellant argues that the trial court erred in not using these dates to conclude that her complaint was timely. We have previously acknowledged that when a written order incorporates a transcript containing a contradictory ruling, the conflicting aspect of the order must be vacated. ***Lugo v. Lugo***, No. W2020-00312-COA-R3-CV, 2021 WL 507889, at \*6 (Tenn. Ct. App. Feb. 10, 2021). Here, however, further argument from both parties' counsel followed the trial court's initial contemplation of these later dates, after which the trial court ultimately concluded that Appellant's claim accrued with the filing of her answer on May 10, 2021. Accordingly, no conflict actually exists between

### i. Injury

In this case, there is no serious dispute regarding when Appellant suffered an actual injury as a result of Appellees' allegedly negligent preparation of Mr. Pace's will. The Paces filed their complaint contesting the validity of the will in the probate court on March 15, 2021. Through counsel, Appellant filed an answer opposing the complaint on May 10, 2021. Being forced to defend the will in response to the Paces' allegations marks when Appellees' allegedly wrongful conduct first caused Appellant to suffer "some actual inconvenience." *Kohl*, 977 S.W.2d at 532 (citation omitted). While the probate court's eventual ruling that the will was, in fact, invalid may have resulted in additional losses, the discovery rule does not allow Appellant to delay filing her malpractice claim until all of her damages are realized. *See id.*; *Honeycutt*, 2007 WL 2200285, at *4. Thus, we conclude that Appellant suffered sufficient injury to meet this element of our analysis when she responded to the Paces' complaint on May 10, 2021—more than one year before filing her malpractice action.

### ii. Knowledge

On appeal, Appellant argues that the trial court erred in granting Appellees' summary judgment motion, as a genuine question of material fact exists as to when she gained the requisite knowledge of her injury.[11] In doing so, Appellant highlights a few "[g]laring differences" between the facts of the instant case and *John Kohl* and *Honeycutt*. First, Appellant asserts that there is no evidence of any communication between the parties revealing her knowledge of Appellees' malfeasance. Yet in the very same argument, Appellant states that she questioned Appellees regarding the validity of the will throughout the proceedings in the probate court. It is clear, then, that while Appellant may not have expressed her displeasure with Appellees' advice regarding the preparation of the will in writing, she did, in fact, make the connection between the will contest and Appellees' advice at some point prior to the probate court's entry of summary judgment.

Appellant also argues that, unlike the plaintiffs in *John Kohl* and *Honeycutt*, there is no evidence that she consulted with another attorney regarding her malpractice claim. Although Appellant does not deny that she was represented by counsel in the probate court, she argues that this representation involved only the probate matter, such that no legal malpractice knowledge could be imputed to her. *See Marc v. Eck*, No. E2023-01643-COA-

---

the trial court's oral ruling and its written order, and we find no reversible error in the trial court disavowing an earlier oral statement upon hearing additional argument. The potential ramifications of an inconsistency between the earlier musings of a trial court and its later written ruling caution against the wholesale incorporation of transcripts into final orders. *See Smith v. All Nations Church of God*, No. W2021-00846-COA-R3-CV, 2022 WL 4492199, at *3 (Tenn. Ct. App. Sept. 28, 2022) ("[I]t should not fall to this Court to parse out a trial court's ruling from its colloquy.").

[11] This argument bleeds into the fraudulent concealment issue, discussed in depth, *infra*.

R3-CV, 2024 WL 3983974, at *6 (Tenn. Ct. App. Aug. 29, 2024) (noting that "in order to impute a lawyer's knowledge to her client, that knowledge must have been obtained by the lawyer during the course <u>and</u> scope of her representation"), *perm. app. denied* (Jan. 23, 2025). In **Marc v. Eck**, the plaintiff was represented by an attorney to litigate a worker's compensation claim. *Id.* at *1. On November 10, 2020, as part of the discovery process, the attorney received the plaintiff's medical records, including those from a spinal surgery performed by the defendant.[12] *Id.* The attorney reviewed the relevant records on November 30, 2020, and informed the plaintiff by December 4, 2020, that there may have been some issue with the surgery. *Id.* The plaintiff provided the defendant with notice of her health care liability claim on November 24, 2021. *Id.* In response to the plaintiff's subsequently filed complaint, the defendant alleged that the claim was time-barred, arguing that the plaintiff was put on notice of the need to investigate her injury with the attorney's November 10, 2020 receipt of the record. *Id.* at *2. The trial court agreed and granted summary judgment for the defendant. *Id.* at *3.

This Court reversed on appeal. We concluded that while the information regarding the negligently performed surgery was obtained by the plaintiff's attorney in the *course* of the worker's compensation representation on November 10, 2020, such information was not within the *scope* of the worker's compensation representation. *Id.* at *6–7. In other words, notice of later medical malpractice fell outside the bounds of the attorney's limited purpose in seeking compensation for the original work-related injury. Instead, it was only after the attorney actually reviewed the relevant records and informed the plaintiff that something might have gone wrong during the surgery that the plaintiff gained the requisite notice that she potentially had a health care liability claim. *Id.* at *7.

Appellant argues that the counsel she hired in the probate court was only involved in Mississippi probate matters, such that questions of legal malpractice under Tennessee law were not within the scope of that representation. However, the knowledge relevant to the second prong of the discovery rule is not whether the malpractice defendant actually breached its standard of care. *See **Shadrick***, 963 S.W.2d at 733. As such, the knowledge to be imputed from Appellant's Mississippi-based probate counsel is not that Appellees' allegedly negligent preparation of Mr. Pace's will constituted malpractice, which we agree, would likely not fall within the scope of the probate representation. Instead, the knowledge to be imputed is that there was "at least a possibility" that the will would be invalidated based on Appellees' advice regarding the preparation of the will. **Honeycutt**, 2007 WL 2200285, at 8. Here, Appellant attempted to probate the will prepared by Appellees in the probate court through Mississippi-based counsel. The complaint filed by the Paces sought to invalidate the will based on the allegedly deficient execution of the will. Appellant's counsel filed an answer opposing these allegations, in the hope that the will would not be

---

[12] The basis of the plaintiff's worker's compensation action is not clear from the opinion. The plaintiff's appellate brief, however, states that she was referred to the defendant for "a work-related injury to her back[.]" Appellant's Brief at *9, *Marc*, 2024 WL 3983974.

invalidated and could be probated. That there was some question regarding the legality of the will's preparation cannot seriously be held to be outside of the bounds of the probate attorney's representation of Appellant. Thus, there can be no question that Appellant's counsel became aware of the challenge to the validity of the will during both the course and the scope of the probate representation, and that this knowledge should be imputed to Appellant.

Arguing that the Paces' complaint to invalidate the will could not provide constructive notice of her claim on its own, Appellant emphasizes that the complaint contained mere *allegations*, not *facts* that could put her on notice of Appellees' negligence.[13] This distinction is somewhat of a red herring, however, as the caselaw is clear that the accrual of Appellant's action does not depend on Appellant actually knowing whether Appellees had breached the relevant standard of care or whether the will would be deemed invalid. *See **Kohl***, 977 S.W.2d at 533; ***Honeycutt***, 2007 WL 2200285, at *9; ***Carvell***, 900 S.W.2d at 29; ***Shadrick***, 963 S.W.2d at 733.

Moreover, allegations made by an opposing party in a dispositive motion were explicitly found to satisfy the second prong of the discovery rule in ***Cardiac Anesthesia Services, PLLC v. Jones***, 385 S.W.3d 530 (Tenn. Ct. App. 2012). There, the plaintiff medical provider hired the defendant attorney to draft a contract between itself and a hospital; the contract contained a fee-splitting arrangement. *Id.* at 532. When the hospital later sued the plaintiff for breach of contract, its June 2006 amended complaint alleged that the contract was illegal because the fee-splitting provision violated Tennessee law. *Id.* at 533. The plaintiff filed an answer and countercomplaint, asserting that the contract was enforceable. *Id.* The hospital moved for summary judgment on the enforceability issue in November 2006, and the trial court denied the motion in January 2007. *Id.* After an October 2007 jury trial, the plaintiff received a directed verdict and breach of contract damages. *Id.* In November 2009, however, the award was vacated and the case dismissed after the Court of Appeals concluded that the fee-splitting arrangement was illegal; permission to appeal to the Tennessee Supreme Court was denied in May 2010. *Id.* The plaintiff filed a malpractice suit against the defendant attorney in October 2010. *Id.* The attorney argued that the malpractice action was barred by the statute of limitations; the trial court agreed and dismissed the claim. *Id.*

---

[13] Appellant relies on ***Story v. Bunstine*** in arguing that an adverse pleading cannot provide sufficient notice to satisfy the discovery rule. However, the Tennessee Supreme Court in that case confined its review to the timing of the plaintiff's actual injury and specifically declined to offer a ruling as to the timing of the plaintiff's actual or constructive knowledge of the defendants' malpractice. 538 S.W.3d at 474 (noting, after describing the plaintiff's notice argument, that "we have already determined that the motion to dismiss should have been denied because the complaint fails to establish an actual injury prior to the date of the final judgment in the underlying proceedings. As such, we conclude that this issue is pretermitted."). The case can therefore offer no support for Appellant's argument. ***Staats v. McKinnon***, 206 S.W.3d 532, 550 (Tenn. Ct. App. 2006) ("It is axiomatic that judicial decisions do not stand for propositions that were neither raised by the parties nor actually addressed by the court.").

On appeal, the plaintiff argued that it could not have known that it had suffered an injury as a result of the attorney's conduct until November 2009, when the provision was held to be illegal. *Id.* at 540. Like Appellant here, the plaintiff relied on the fact that it had taken no action to evince any earlier knowledge of a legal claim against the attorney. *Id.* at 545. But the lack of proof regarding the plaintiff's actual knowledge of either attorney negligence or its specific legal claim was not persuasive to the Court of Appeals. *Id.* (citing *Kohl*, 977 S.W.2d at 533). Instead, we looked to the hospital's summary judgment motion, finding that it put the plaintiff "on notice of Tennessee law, which could invalidate the contract drafted by [the attorney]." *Id.* at 546. With the filing of the motion, the plaintiff "was reasonably put on notice of a 'potential problem' with [the] contract, which was undisputedly drafted by [the attorney]." *Id.* We noted that "[o]ther decisions have specifically held that events other than a court order may put the plaintiff on notice of an injury due to an attorney's conduct." *Id.* (citing *Kohl*, 977 S.W.2d at 532–33; *Carvell*, 900 S.W.2d at 29 (holding that the knowledge requirement was met when the clients were sued regarding a deed that their attorney prepared); *Lufkin v. Conner*, 338 S.W.3d 499 (Tenn. Ct. App. 2010) (holding that motion to suppress put the client on notice of potential injury); *Honeycutt*, 2007 WL 2200285, at *10; *Wilkins v. Dodson, Parker, Shipley, Behm & Seaborg*, 995 S.W.2d 575, 583 (Tenn. Ct. App. 1998) (holding that client was put on notice of potential problem with representation when client's adversary raised issue of statute of limitations in its answer); *Memphis Aero Corp. v. Swain*, 732 S.W.2d 608, 612 (Tenn. Ct. App. 1986) (holding that client was put on notice of potential problem with representation when he was sued)). Accordingly, we held that "a motion that specifically attacks the legality and enforceability of a contract drafted by an attorney puts a reasonable party on notice that the party has been injured by the drafting attorney's conduct." *Id.*

We see no reason not to extend this analysis to an attack on the enforceability of a will prepared by an attorney.[14] With their March 15, 2021 complaint, the Paces presented Appellant with Mississippi law that they argued rendered the will unenforceable, such that she "was reasonably put on notice of a 'potential problem' with [the will], which was undisputedly drafted by [Appellees]." *Id.* As such, by the time that she filed her answer in the probate court, Appellant had became aware, or reasonably should have become aware, that: (1) Appellees had prepared the will; (2) the Paces were challenging the validity of the

---

[14] Despite the trial court in *Cardiac Anesthesia* holding that the limitations period may also have begun running with the June 2006 filing of the hospital's amended complaint raising the unenforceability of the contract, this Court relied solely on the November 2006 summary judgment motion in determining the accrual of the plaintiff's claim. No explanation was provided for the decision to focus only on the later date.

Even if we were to divine some implicit rule from this silence and looked instead to the Paces' motion for summary judgment, we would still be unable to find Appellant's September 2023 complaint to have been timely. The Paces filed their motion for summary judgment on July 16, 2021. The one-year limitations period would therefore have expired on July 16, 2022, a deadline the parties' July 20, 2022 Tolling Agreement was unable to revive.

will based on Mississippi law; (3) there was at least a possibility that the will would be invalidated and her bequeathment reduced because of Appellees' advice regarding the attestation of the will; and (4) she was being forced to take action to defend against the Paces' allegations. Together, these facts were sufficient to put a reasonable person on notice that "an injury has been sustained as a result of [Appellees'] negligent or wrongful conduct." *Kohl*, 977 S.W.2d at 532. While a plaintiff's constructive knowledge is typically a question of fact, "dismissal is appropriate where the undisputed facts demonstrate that no reasonable trier of fact could conclude that a plaintiff should not have known through the exercise of reasonable care and diligence that she was injured as a result of a defendant's wrongful conduct." *Daffron v. Mem'l Health Care Sys., Inc.*, 605 S.W.3d 11, 20 (Tenn. Ct. App. 2019) (citing *Young ex rel. Young v. Kennedy*, 429 S.W.3d 536, 557–58 (Tenn. Ct. App. 2013)). We therefore conclude that Appellant had the constructive knowledge that Appellees' allegedly negligent conduct had caused her an injury required to meet this element of our analysis when she filed her answer on May 10, 2021—more than one year before filing her malpractice action.[15]

### B. Fraudulent Concealment

Although we have determined that the trial court correctly held that, under our discovery rule, the limitations period for Appellant's action began on May 10, 2021, our inquiry does not end there. The final issue before us is whether there is any basis to toll the accrual of Appellant's claim. In ruling that Appellant's claim was untimely, the trial court concluded that Appellant had failed to establish that her discovery of her malpractice claim was delayed due to fraudulent concealment by Appellees. The trial court found that Mr. Tual's alleged assurances of the will's validity were offered following the accrual of Appellant's claim, and thus could not amount to fraudulent concealment and did not operate to toll the limitations period.

As Appellees note, Appellant's initial brief neither included this ruling by the trial court among the issues raised for review, nor offered any direct argument that this ruling was in error.[16] Such an omission generally results in waiver. *Trezevant v. Trezevant*, 696 S.W.3d 527, 530 (Tenn. 2024) (per curiam) (noting that "[a]ppellate review is generally

---

[15] Appellant questions the sensibility of requiring her to bring this malpractice action when she was still defending the validity of the will in the probate court. Indeed, this Court acknowledged the difficulty faced by clients in being required to bring a malpractice suit before the conclusion of the underlying action: "[the client] would be suing her attorney for negligently advising her in the malpractice case, while maintaining that her attorney's advice was correct in the underlying suit." *Honeycutt*, 2007 WL 2200285, at *11. We offered a possible solution to the discomfort of these inconsistent positions, however, noting that a client can request a stay of a timely-filed malpractice action pending the resolution of the underlying proceedings. *Id.* (quoting *Carvell*, 900 S.W.2d at 29).

[16] As noted above, Appellant did raise the trial court's fraudulent concealment ruling as an issue in her reply brief. "Reply briefs, however, are generally not a vehicle to correct deficiencies in initial briefs." *Augustin v. Bradley Cnty. Sheriff's Off.*, 598 S.W.3d 220, 227 (Tenn. Ct. App. 2019) (citing *Fichtel v. Fichtel*, No. M2018-01634-COA-R3-CV, 2019 WL 3027010, at *19 (Tenn. Ct. App. July 10, 2019)).

limited to the issues that have been presented for review" (quoting **Hodge v. Craig**, 382 S.W.3d 325, 335 (Tenn. 2012)). However, Appellees go on to offer a rebuttal to what they discern to be Appellant's position. Because Appellees were able to offer an argument in opposition, we will discuss the merits of the fraudulent concealment argument despite Appellant's technical deficiency. *See id.* (explaining that the importance of a brief's statement of the issues stems in part from its ability to "ensure[] that the opposing party has notice of the issues to which it must respond" (citing **Donovan v. Hastings**, 652 S.W.3d 1, 9 (Tenn. 2022)); **DiNovo v. Binkley**, 706 S.W.3d 334, 337 (Tenn. 2025) (remarking that "Tennessee courts must reasonably exercise their discretion to excuse technical deficiencies that do not significantly impede the appellate process"). Still, we caution litigants that we may not be so forgiving in the future.

"[F]raudulent concealment exists when a party having a duty to disclose some fact or facts intentionally hides the facts with the intent to mislead the other party. For concealment to constitute fraud, there must be a suppression of material facts that one party was legally or equitably obligated to communicate."[17] **Cherry**, 36 S.W.3d at 85 (internal citation omitted). In the context of accrual of a legal malpractice action under the discovery rule, "the concealment must involve the facts from which the client could deduce that it had a cause of action." **Id.**; *see also* **Redwing v. Cath. Bishop for Diocese of Memphis**, 363 S.W.3d 436, 462 (Tenn. 2012) (holding that "the reference to 'cause of action' in this context is synonymous with the plaintiff's injury"). Inasmuch as the discovery rule itself applies only to matters of fact unknown to a potential plaintiff, not to matters of law, this Court has explained that "we do not believe that reliance upon erroneous legal advice can operate to toll the statute of limitations[.]" **Spar Gas, Inc. v. McCune**, 908 S.W.2d 400, 404 (Tenn. Ct. App. 1995). Additionally, fraudulent concealment does not apply "where the court finds a plaintiff was aware or should have been aware of facts sufficient to put the plaintiff on notice that a specific injury has been sustained as a result of another's negligent or wrongful conduct." **Sommer v. Womick**, No. M2004-01236-COA-R3-CV, 2005 WL 1669843, at *4 (Tenn. Ct. App. July 18, 2005) (citing **Shadrick**, 963 S.W.2d at 736); *see also* **Redwing**, 363 S.W.3d at 463 (explaining that fraudulent concealment tolls the statute of limitations only so long as "the plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence").

Appellant asserts on appeal that fraudulent concealment is "circumstantially evident from [Appellees'] repeated assurances of Will legality, and the failure to admit that there might be an enforceability issue under Mississippi law when questioned by [Appellant]." She likens the instant case to **Wilson v. Mathes**, 15 S.W.3d 865 (Tenn. Ct. App. 1999). There, the defendant attorney was hired in the fall of 1992 to represent a client in a retaliatory discharge action. **Id.** at 866. The trial court granted summary judgment for the former employer in January 1994, as the complaint was barred by the statute of limitations.

---

[17] From our review of the record, it is unclear whether an attorney-client relationship ever existed between Appellant and Appellees. Still, Appellees have not disputed that some duty was owed to Appellant.

*Id.* The dismissal was affirmed by the Court of Appeals in January 1996. *Id.* At that time, the attorney informed the client that he might have a malpractice claim against her. *Id.* The bankruptcy trustee for the client's estate filed a malpractice action in January 1997. *Id.* The attorney moved for summary judgment based on the expiration of the statute of limitations, arguing that the client's claim accrued in January 1994, when the underlying suit was dismissed. *Id.* The trial court denied the motion, and the attorney appealed. *Id.*

Affirming the denial of the motion on appeal, this Court relied in large part on the client's affidavit. *Id.* at 872. Therein, the client explained that he had consulted with the attorney many times and was repeatedly assured that the former employer's motion to dismiss was meritless. *Id.* And when the motion was granted, the attorney continued to assure the client that the ruling was wrong and would be reversed on appeal. *Id.* At no point prior to the appellate ruling was the client advised to seek independent counsel. *Id.* The attorney filed her own affidavit, but did not contradict the client's testimony regarding her assurances that the motion was meritless and the dismissal would be reversed on appeal. *Id.* Viewing these facts in the light most favorable to the client, this Court determined that the attorney's "actions and assurances" to the client "could cause 'reasonable persons' to disagree as to whether [the client] knew or should have known that he suffered an injury due to [the attorney's] negligence on the day that the trial court dismissed his cause of action." *Id.* Thus, the question of when the client gained the notice required for his malpractice claim to accrue was not suitable for summary judgment and needed to be decided by the trier of fact.

One key fact distinguishes this case from *Wilson*: there, the attorney's assurances regarding the merits of the opposing party's motion came when the attorney was actively litigating the motion on behalf of the client. The on-going relationship helped create a question of fact regarding the reasonableness of the client's reliance on the attorney's advice. While Appellant emphasizes Mr. Tual's continued assurances that the will was enforceable, she cannot deny that she was represented by other attorneys in litigating the merits of the Paces' allegations otherwise. Indeed, Appellant mentions in her amended complaint that the advice she received from her lawyers caused her to dismiss her appeal of the probate court's invalidation of the will. So although the attorney's failure to advise the client to seek independent counsel was relevant in *Wilson*, we cannot say the same here where Appellant was already benefiting from the legal advice of a third party. *See Cardiac Anesthesia Servs.*, 385 S.W.3d at 546 ("In *Wilson*, this Court held that genuine issues of material fact existed as to whether the plaintiff knew that his injury was caused by his attorney's wrongful conduct because the attorney continued to represent the plaintiff, did not advise the plaintiff to seek independent counsel and continuously assured the plaintiff that the attorney's actions were 'carefully researched' and proper. In contrast, the record in this case shows that [the plaintiff] was represented by a different attorney throughout the litigation in [the underlying action]." (citation omitted)).

Moreover, fraudulent concealment only tolls the statute of limitations so long as

"the plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence[.]" ***Redwing***, 363 S.W.3d at 463; *see also* ***Honeycutt***, 2007 WL 2200285, at *11 n.1 (noting that a fraudulent concealment argument would have been without merit because the attorney's assurances that the motion to terminate alimony would be unsuccessful came after the client was already on notice that she had suffered an injury). As discussed, *supra*, however, by the time that Appellant filed her answer to the Paces' will contest, she had been provided with sufficient facts from which a reasonable person would have been put on notice that she was being required to take action as a result of Appellees' preparation of the will. Thus, even if we accept that Appellees intentionally concealed facts from which Appellant could have discovered her injury, reasonable care and diligence would nevertheless have enabled Appellant to discover both the injury and the identity of the alleged wrongdoer no later than May 10, 2021. Any efforts by Appellees to conceal Appellant's cause of action following the entry of her answer simply could not have negated this constructive knowledge. *See* ***Daffron***, 605 S.W.3d at 24 ("Insofar as [the plaintiff] alleges fraudulent concealment on the part of [the defendant], that argument is subsumed into our analysis concluding that she was 'aware of facts sufficient to place a reasonable person on notice that the injury was the result of the wrongful conduct of another.'" (quoting ***Sherrill v. Souder***, 325 S.W.3d 584, 595 (Tenn. 2010))). Accordingly, we decline to invoke the doctrine of fraudulent concealment to toll the statute of limitations applicable to Appellant's legal malpractice claim. *Cf.* ***Sommer***, 2005 WL 1669843, at *5 ("While the results in a particular case may seem harsh, it is not unfair to require a person, who is aware or should be aware of facts that would put a reasonable person on notice that he or she has a claim against another citizen, to pursue that claim within the time required by our statutes."). Because the undisputed facts establish that Appellant's claim accrued more than one year prior to the filing of her action and there is no basis for tolling the limitations period, the grant of summary judgment dismissing this case was proper.

## V. CONCLUSION

The judgment of the Shelby County Circuit Court is affirmed, and this matter is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellant Celeste LaChapelle, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE